ESTATE OF RALPH D. COWSER, DECEASED, PATRICIA ANN TUCKER, EXECUTRIX, PETITIONER *v.* COMMISSIONER OF INTERNAL REVENUE, RESPONDENT

Docket No. 14699–82.     Filed April 25, 1983.

*Gery R. Gasick*, for the petitioner.

---

[8]Cf. *Hillsboro National Bank v. Commissioner*, 455 U.S. 906, 986, 51 U.S.L.W. 4259, 4267 (Mar. 7, 1983).

*Michael W. Bitner* for the respondent.

OPINION

COHEN, *Judge*: This case is before the Court on respondent's Motion for Judgment on the Pleadings under Rule 120(a), Tax Court Rules of Practice and Procedure.

Ralph D. Cowser (decedent) died on March 15, 1978. Petitioner is the duly appointed and qualifying personal representative of the estate of the decedent and resided at Glasford, Ill. at the time the petition herein was filed.

Petitioner timely filed an estate tax return for the estate of the decedent with the Internal Revenue Service Center, Springfield, Ill. On that return, petitioner elected to specially value a piece of real property consisting of 153.3 acres in Peoria County, Ill. (the Cowser Farm), under the provisions of section 2032A.[1]

By notice of deficiency dated March 30, 1982, respondent determined a deficiency in estate taxes in the amount of $71,430.88. That deficiency resulted from certain adjustments not now in dispute and disallowance of the special use valuation elected by petitioner with respect to the Cowser Farm. The fair market value of the Cowser Farm (without consideration of special use valuation) was $300,000 at decedent's death. The "special use value" of that property was $62,500, and the executor elected to use that value for estate tax purposes and filed an agreement as required by section 2032A(d).

Decedent, by his last will and testament dated September 13, 1975, devised the Cowser Farm to Patricia Ann Tucker (Patricia), the grandniece of decedent's predeceased spouse, and Hartley D. Tucker (Hartley), the husband of Patricia.

The issues for determination are: (1) Whether the Cowser Farm passed to "qualified heirs" of the decedent under section 2032A(e) as in effect at the date of decedent's death, and (2) whether section 2032A(e)(2) as applied to petitioner establishes an unreasonable and arbitrary classification of persons that deprives decedent's estate of property without due process of law in violation of the Fifth Amendment of the Constitution.

---

[1]Unless otherwise indicated, all statutory references are to the Internal Revenue Code of 1954 as amended and in effect at the date of death.

The pertinent provisions of section 2032A were adopted as a part of the Tax Reform Act of 1976, sec. 2003(a), Pub. L. 94–455, 90 Stat. 1856, in order to encourage the continued use of property for farming and other small business purposes by reducing the tax burden upon such property. H. Rept. 94–1380 (1976), 1976–3 C.B. (Vol. 3) 755, 756; S. Rept. 94–938, Part 2 (1976), 1976–3 C.B. (Vol. 3) 657. The perceived unfortunate tax consequence resulted from valuing real property at its highest and best use rather than at its then-existing family use. This result occurred because the real property was in effect valued separate and apart from the going business or farm. See D. Kelly & D. Ludtke, Estate Planning for Farmers and Ranchers 642–643 (1980). The thrust of the 1976 statute is to allow taxes on estate property to be computed on an income capitalization method of valuation of "qualified" real property, rather than the traditional "fair market value" based on its highest and best use.

The tax relief provided by the statute, however, is limited in several ways. The decedent must have been a resident or citizen of the United States, and the subject real property must be located in the United States. The real property must have been used as a farm or in a trade or business by the decedent or a member of the decedent's family, with material participation in the operation of the farm or the business by the decedent or a member of the decedent's family. Real property qualifies for special use valuation only if it passes to "a qualified heir," who must be a member of the decedent's family. The ownership and use requirements must continue for 10 years after the decedent's death to avoid recapture of part of the tax savings resulting from special use valuation. Sec. 2032A(c). These requirements all express the intent of Congress to limit this particular form of tax relief to what would generally be regarded as a family farm or business. See *Estate of Geiger v. Commissioner*, 80 T.C. 484 (1983).

## I. The Qualified Heir Issue

There appears to be no authority supporting petitioner's position, and the language and legislative history of section 2032A support respondent's determination, at least insofar as petitioner seeks to classify the Cowser Farm as property passing to a "qualified heir."

The term "qualified heir" is defined in section 2032A(e)(1) as follows:

The term "qualified heir" means, with respect to any property, a member of the decedent's family who acquired such property (or to whom such property passed) from the decedent. If a qualified heir disposes of any interest in qualified real property to any member of his family, such member shall thereafter be treated as the qualified heir with respect to such interest.

To be a qualified heir, one must therefore be a member of decedent's family. Section 2032A(e)(2) as in effect on the date of decedent's death provided:

The term "member of the family" means, with respect to any individual, only such individual's ancestor or lineal descendant, a lineal descendant of a grandparent of such individual, the spouse of such individual, or the spouse of any such descendant. For purposes of the preceding sentence, a legally adopted child of an individual shall be treated as a child of such individual by blood.

Petitioner contends that the language of section 2032A(e)(2) is vague and ambiguous, and that this vagueness is shown by the fact that in the Economic Recovery Tax Act of 1981 (Pub. L. 97–34, 95 Stat. 172) Congress divided that section into subparagraphs.[2] Petitioner argues that the phrase "the spouse of such individual" in section 2032A(e)(2) as in effect at the date of decedent's death could be construed to mean a lineal descendant of a grandparent of such individual's spouse. We disagree.

When, as in the present case, the provision is one granting relief from the full rate of taxation, doubts, if any, must be resolved against the taxpayer. *Helvering v. New York Trust Co.*, 292 U.S. 455 (1934); *Heiner v. Colonial Trust Co.*, 275 U.S. 232, 235 (1927). Although it is possible that section 2032A(e)(2) could have been written more understandably, we conclude that it is not susceptible of the meaning contended for by

---

[2]Effective for decedents dying after 1981, sec. 2032A(e)(2) reads:

(2) MEMBER OF FAMILY.—The term "member of the family" means, with respect to any individual, only—

    (A) an ancestor of such individual,

    (B) the spouse of such individual,

    (C) a lineal descendant of such individual, of such individual's spouse, or of a parent of such individual, or

    (D) the spouse of any lineal descendant described in subparagraph (C).

For purposes of the preceding sentence, a legally adopted child of an individual shall be treated as the child of such individual by blood.

petitioner. The structure of the sentence, i.e., the position of the phrase "spouse of such individual" between "grandparent of such individual" and "the spouse of any such descendant" precludes petitioner's interpretation. If the lineal descendants of a grandparent of the individual's spouse were included by reason of the order of the phrases, so might be the lineal descendants of the grandparents of the spouses of the other descendants—an infinitely and unreasonably large group.[3]

Congress made several technical changes to section 2032A(e)(2) in the Economic Recovery Tax Act of 1981 (Pub. L. 97-34, *supra*). Applicable to estates of decedents dying after 1981, the definition of "member of the family" in section 2032A(e)(2) was expanded to include the lineal descendant's of one's spouse.[4] Even under this new definition, neither the grandniece of a predeceased spouse nor her spouse would be a qualified heir of the decedent.

Patricia was the grandniece of the decedent's predeceased spouse. As such, she was not an ancestor or lineal descendant of the decedent, a lineal descendant of a grandparent of the decedent, or the spouse of any such descendant as required by section 2032A(e)(2). Hartley is related to the decedent solely by reason of being the spouse of Patricia. Although the spouse of a "member of decedent's family" is a qualified heir, because Patricia is not a "member of decedent's family," Hartley is not a qualified heir.

## II. The Constitutionality Issue

A Federal statute passed under the taxing power of Congress may be so arbitrary and capricious as to be invalid under the due process of law clause of the Fifth Amendment to the Constitution. *Heiner v. Donnan*, 285 U.S. 312, 326 (1932). A classification for purposes of taxation must rest on some reasonable distinction. *Schlesinger v. State of Wisconsin*, 270 U.S. 230 (1926). Normally, however, a legislative classification

---

[3]The legislative history of the Economic Recovery Tax Act of 1981 (Pub. L. 97-34, 95 Stat. 172) also contradicts petitioner's interpretation. In describing the "Present Law" (i.e., the law in effect at the date of decedent's death) Congress stated: "The term [qualified heir] does not include members of a spouse's family." H. Rept. 97-201 (1981), 1981-2 C.B. 352, 380 n. 4; H. Rept. 97-215 (Conf.) (1981), 1981-2 C.B. 481, 510.

[4]See note 2 *supra*.

will not be set aside if any state of facts rationally justifying it is demonstrated to or perceived by the courts. *United States v. Maryland Savings-Share Insurance Corp.*, 400 U.S. 4, 5–6 (1970); *McDonald v. Board of Election Commissioners*, 394 U.S. 802, 809 (1969); *McGowan v. Maryland*, 366 U.S. 420, 426 (1961); *Standard Oil Co. v. City of Marysville*, 279 U.S. 582, 586–587 (1929). In reviewing a legislative classification, a margin must be allowed for the play of legislative judgment. *Burnet v. Wells*, 289 U.S. 670, 678 (1933).

Petitioner argues that Patricia and Hartley would have inherited the Cowser Farm and that farm would have qualified for special use valuation on the death of decedent's spouse if decedent had predeceased his spouse,[5] and the determination of qualified heir status based on the chance order of the deaths of the decedent and his spouse (in fact 5 years apart) is arbitrary and capricious. She further argues that section 2032A(e)(2) as applied to decedent's estate is violative of Congress' intent in enacting section 2032A (i.e., preserving the family farm).

In enacting the relief provisions of section 2032A, Congress was not required to and in fact did not extend that relief to an unlimited number of "family" members. The term "member of the family" was limited to the decedent's spouse and certain close relatives of the decedent and their spouses. Extending the relief to collateral relatives of a decedent's predeceased spouse would have significantly enlarged the potential number of qualified heirs and substantially increased the resulting loss of revenue. The line had to be drawn somewhere, and we cannot substitute our judgment for that of Congress merely on the basis of apparent hardships in particular cases. See *Metzger Trust v. Commissioner*, 76 T.C. 42, 80 (1981), affd. 693 F.2d 459 (5th Cir. 1982). The definition of "member of the family" in section 2032A(e)(2) falls within the margin that must be allowed for the play of legislative judgment. *Burnet v. Wells, supra.*

*Decision will be entered for the respondent.*

---

[5]Petitioner's argument is based on evidence purporting to establish an agreement between the spouses that they would each execute wills leaving the property to Patricia and Hartley in the event that the other spouse died first. Assuming for purposes of this case that such agreement would have been honored does not change the result here reached.