**ESTATE OF Ralph D. COWSER, Deceased, Patricia Ann Tucker, Executor, Petitioner-Appellant,**

v.

**COMMISSIONER OF INTERNAL REVENUE, Respondent-Appellee.**

No. 83–2329.

United States Court of Appeals, Seventh Circuit.

Argued Jan. 12, 1984.

Decided June 13, 1984.

Gery R. Gasick, McConnell, Kennedy, Quinn & Johnston, Peoria, Ill., for petitioner-appellant.

Thomas A. Gick, Atty., Tax Div., Dept. of Justice, Washington, D.C., for respondent-appellee.

Before BAUER, WOOD and COFFEY, Circuit Judges.

HARLINGTON WOOD, Jr., Circuit Judge.

Ralph D. Cowser died on March 15, 1978, leaving no surviving descendants. He devised his family farm to his deceased wife's grandniece and her husband, Patricia and Hartley Tucker. Patricia Tucker, as executrix of Ralph Cowser's estate, attempted to invoke the special use valuation provisions of section 2032A of the Internal Revenue Code, 26 U.S.C. § 2032A (1976). The Internal Revenue Service found that the grandniece was not a qualified heir, and assessed a $71,430.88 federal estate tax deficiency. The Tax Court, 80 T.C. 783, upheld the determination of the IRS. Patricia Tucker now appeals this decision, claiming: (1) that the Tuckers should be considered "qualified heirs" under the statute; and (2) that if they do not qualify under the statute, then the statute as applied violates the due process clause of the fifth amendment. In other words, appellant argues that the language and purpose of section 2032A, along with the due process clause of the fifth amendment, requires that "qualified heirs" include not only the lineal descendants of a decedent's grandparents, but also the lineal descendants of a decedent's spouse's grandparents. Although we appreciate the Tuckers' viewpoint, we must affirm.

## I. *Interpretation of the Statute*

■ The federal estate tax on real property is normally determined by valuing the property at its highest and best use. To pay these taxes, the devisees of family farms and closely-held businesses were frequently forced to sell their newly-inherited property. As a means of preventing these forced conversions, Congress adopted section 2032A as part of the Tax Reform Act

of 1976, Pub.L. 94–455, § 2003(a), 90 Stat. 1525, 1856 (1976). S.Rep. No. 938, pt. 2, 94th Cong., 2d Sess. 15 (1976); H.R.Rep. No. 1380, 94th Cong., 2d Sess. 21–22 (1976), U.S.Code Cong. & Admin.News 1976, 2897. Under section 2032A, certain real property used in family farming and closely-held businesses may be valued on the basis of the property's actual use at the time of the decedent's death, rather than on the basis of its highest and best use. *See also Estate of Geiger v. Commissioner*, 80 T.C. 484, 487–88 (1983).

To qualify for the special use valuation of section 2032A, the real property must pass to a "qualified heir" of the decedent. 26 U.S.C. § 2032A(b)(1). Section 2032A(e)(1) defines "qualified heir" as "a member of the decedent's family who acquired such property (or to whom such property passed) from the decedent." Section 2032A(e)(2), as in effect at the time of Ralph Cowser's death, defined a member of a decedent's family as follows:

> The term "member of the family" means, with respect to any individual, only such individual's ancestor or lineal descendant, a lineal descendant of a grandparent of such individual, the spouse of such individual, or the spouse of any such descendant.[1]

Appellant argues that the phrase "lineal descendant of a grandparent of such individual" and "spouse of such individual" must be read in conjunction with one another, and that the latter phrase modifies the former so that the language translates to mean "a lineal descendant of a grandparent of such individual *and* a lineal descendant of a grandparent of such individual's spouse." We do not agree. Read in the context of the statute, "such individual" clearly refers to the decedent, and the phrases "such individual's ancestor or lineal descendant, a lineal descendant of a

---

1. In 1981 Congress revised parts of section 2032A, including the definition of family member. The definition now reads:

> The term "member of the family" means, with respect to any individual, only—
> (A) an ancestor of such individual,
> (B) the spouse of such individual,

> (C) a lineal descendant of such individual, of such individual's spouse, or of a parent of such individual, or
> (D) the spouse of any lineal descendant described in subparagraph (C)....

26 U.S.C. § 2032A(e)(2) (Supp. V 1981).

grandparent of such individual, the spouse of such individual, or the spouse of any such descendant" stand by themselves separately identifying different qualified members of a family.

If Patricia Tucker had been the grandniece of the decedent, she would be a qualified heir. But she was the grandniece of the decedent's wife. Consequently, under the plain language of section 2032A, Patricia Tucker is not a qualified heir: she is not an ancestor or lineal descendant of the decedent, a lineal descendant of a grandparent of the decedent, or the spouse of the decedent or of another qualified descendant. Patricia's husband, the other devisee of the land, similarly fails to qualify as a qualified heir. Contrary to appellant's contention, there exists no ambiguity in the language defining "qualified heir" and "member of family."

Appellant argues, however, that even if the technical language of section 2032A is construed as not including the Tuckers, this court should still allow them to take advantage of the section 2032A special valuation provision because the Tuckers are "a prime example of the people Congress intended to benefit by enacting Section 2032A." Appellant asserts that Congress sought to encourage the continued existence of the family farm by allowing the owner of a family farm to transfer the farm to other members of the family who could then value it for estate tax purposes at less than its true fair market value, and that "family" should include the family of either spouse.

■ It is a common rule of statutory construction that when the plain language of a statute is clear, courts need look no farther than those words in interpreting the statute. *Ernst & Ernst v. Hochfelder,* 425 U.S. 185, 201, 96 S.Ct. 1375, 1384, 47 L.Ed.2d 668 (1976); *United States v. Ore-*

*gon,* 366 U.S. 643, 648, 81 S.Ct. 1278, 1280, 6 L.Ed.2d 575 (1961). It is true that in a small number of cases where the words of a statute are " 'plainly at variance with the policy of the legislation as a whole' " courts may look beyond those words to interpret the statute in a way more truly consistent with the intent of Congress. *United States v. American Trucking Associations, Inc.,* 310 U.S. 534, 543, 60 S.Ct. 1059, 1063, 84 L.Ed. 1345 (1940) (quoting *Ozawa v. United States,* 260 U.S. 178, 194, 43 S.Ct. 65, 67, 67 L.Ed. 199 (1922)); *see also Perry v. Commerce Loan Co.,* 383 U.S. 392, 399–400, 86 S.Ct. 852, 856, 15 L.Ed.2d 827 (1966); *Helvering v. New York Trust Co.,* 292 U.S. 455, 464–65, 54 S.Ct. 806, 808–09, 78 L.Ed. 1361 (1934). Although allowing people like the Tuckers to take advantage of the special valuation provisions of section 2032A may help save more family farms, we do not believe that adhering to the precise language of the statute (and thereby excluding persons who might otherwise be considered "family" as that term is used in everyday parlance) is so plainly at variance with congressional intent that we should presume Congress did not mean what it said when it defined "qualified heir."

■ Tax relief designed to induce a certain type of behavior generally involves a tradeoff of lost revenue for the federal treasury. It is the elected members of Congress and not the members of this court that must decide where to strike the appropriate balance.[2] *See Regan v. Taxation with Representation of Washington,* 461 U.S. 540, ——, 103 S.Ct. 1997, 2003, 76 L.Ed.2d 129 (1983). We may not agree with where the line is drawn, but we are not in a position to move it. We may only interpret and enforce the laws Congress gives us; we may not rewrite or amend them as we see fit. If Congress intended

---

**2.** For example, if we accepted the appellant's position that by "member of family" Congress really intended to include all lineal descendants of a decedent's spouse's grandparents, we would not only extend the tax relief benefits of section 2032A to grandnieces and nephews of a decedent's spouse, but also to much more remotely related individuals such as third cousins of a decedent's spouse. While, as we noted above, this conceivably might have the effect of saving more family farms, this may not have been the interpretation Congress intended (*i.e.,* the price may be too high). *See infra* page 1174.

to let a broader group of persons qualify as "members of the family" than the plain language of section 2032A indicates, then Congress may rewrite the statute. We may not. *Badaracco v. Commissioner*, — U.S. —, —, —, 104 S.Ct. 756, 764, 765, 78 L.Ed.2d 549 (1984); *see also Corn Products Refining Co. v. Commissioner*, 350 U.S. 46, 52, 76 S.Ct. 20, 22, 100 L.Ed. 29 (1955) (when a statute grants relief from the full rate of taxation, doubts in construing the statute must be resolved against the taxpayer).

Even looking to the legislative history, we find no support for the appellant's interpretation of section 2032A. Both the House and the Senate reports on the Tax Reform Act of 1976, of which section 2032A is a part, explain that "[t]he term 'qualified heir' means a member of the *decedent's* family, including *his* spouse, lineal descendants, parents, grandparents, and aunts and uncles *of the decedent* and their descendants." S.Rep. No. 938, 94th Cong., pt. 2, 2d Sess. 15 (1976) (emphasis added); *see also* H.R.Rep. No. 1380, 94th Cong., 2d Sess. 23 (1976), U.S.Code Cong. & Admin.News 1976, 3377, 4041. Under normal rules of sentence construction, "lineal descendants, parents, grandparents, and aunts and uncles" all modify "decedent," not "his spouse," i.e., "his spouse" is simply one of the qualified heirs in the list.

■ The legislative history of the Tax Incentive Act of 1981, which made several technical changes in section 2032A, further supports our conclusion that "qualified heir" does not include a decedent's spouse's grandniece or grandnephew. Under its description of the law as it existed before the 1981 amendments—*i.e.*, the law that governs this case—Congress noted that the term qualified heir "does not include members of a spouse's family." H.R.Rep. No. 201, 97th Cong., 1st Sess. 165 n. 4 (1981). Congress then extended the meaning of qualified heir to include the lineal descendants of a decedent's spouse (*e.g.*, children by a prior marriage), but not lineal descendants of a spouse's grandparents. *See id.* at 176. Thus, Congress itself has stated that section 2032A as in effect at the time of Ralph Cowser's death did not include members of a decedent's spouse's family within the definition of "qualified heirs." And even when Congress acted to include members of the decedent's spouse's family, Congress did not extend the definition of qualified heir beyond a spouse's lineal descendants to include persons in the position of Patricia and Hartley Tucker—lineal descendants of a spouse's grandparents. Although the 1981 Congress cannot speak conclusively for the 1976 Congress, what it says can certainly be considered. Given this 1981 congressional pronouncement, the plain meaning of the language of the statute, and the lack of any evidence supporting a contrary interpretation of the definition of qualified heir, we are persuaded that qualified heirs include lineal descendants of a decedent's grandparents, but not lineal descendants of a decedent's spouse's grandparents.

## II. *Due Process Claim*

Appellant next argues that even if the Commissioner's interpretation of section 2032A is correct, the statute's classification—bestowing tax relief benefits on a decedent's family and not a decedent's spouse's family—does not rest upon any reasonable and valid distinction and thus violates due process. Appellant points out that if Ralph Cowser had predeceased his wife Sara, so that the farm would have passed to the Tuckers from Sara rather than from Ralph, then the Tuckers would have qualified for the special valuation provisions of section 2032A. In sum, appellants argue that the statute's definition of qualified heir as applied to them is arbitrary and violates due process because whether they qualify for special use valuation hinges on the chance order of death of the grandaunt and granduncle. More generally, appellant points out that every time a childless farm couple chooses to devise their farm to a family member, the ability of the devisee to utilize the special use valuation provisions of section 2032A will hinge on which spouse of the farm couple dies first.

■ While we agree that the statute, as the Tuckers' case illustrates, may have an aura of unfairness in certain instances, we do not find it so unreasonable as to violate the due process clause. Congress' power to categorize and classify for tax purposes is extremely broad. *Regan v. Taxation with Representation of Washington*, 461 U.S. at ——, 103 S.Ct. at 2002; *Lehnhausen v. Lake Shore Auto Parts Co.*, 410 U.S. 356, 359, 364, 93 S.Ct. 1001, 1003, 1006, 35 L.Ed.2d 351 (1973); *Steward Machine Co. v. Davis*, 301 U.S. 548, 584, 57 S.Ct. 883, 889, 81 L.Ed. 1279 (1937); *Brushaber v. Union Pacific Railroad Co.*, 240 U.S. 1, 26, 36 S.Ct. 236, 245, 60 L.Ed. 493 (1916); *Flint v. Stone Tracy Co.*, 220 U.S. 107, 158, 31 S.Ct. 342, 351, 55 L.Ed. 389 (1911); *see also Barter v. United States*, 550 F.2d 1239, 1240 (7th Cir.1977) (per curiam) (statutory difference in tax rates for married couples and single individuals does not violate due process clause of fifth amendment; "perfect equality or absolute logical consistency between persons subject to the Internal Revenue Code ... [is not] a constitutional *sine qua non*"), *cert. denied*, 434 U.S. 1012, 98 S.Ct. 725, 54 L.Ed.2d 755 (1978). A tax classification rationally related to a legitimate governmental interest will not be disturbed unless the classification is invidious or unjustifiably infringes a fundamental right. *Regan v. Taxation with Representation of Washington*, 461 U.S. at ——, 103 S.Ct. at 2001–02; *see also United States v. Maryland Savings-Share Insurance Corp.*, 400 U.S. 4, 6, 91 S.Ct. 16, 17, 27 L.Ed.2d 4 (1970) (per curiam), *Madden v. Kentucky*, 309 U.S. 83, 87–88, 60 S.Ct. 406, 407–08, 84 L.Ed. 590 (1940). Since section 2032A does not use inherently suspect classifications (*e.g.*, a classification based on race or national origin), and does not affect a fundamental right,[3] we must merely determine whether it is rationally related to a legitimate governmental purpose. *Regan v. Taxation with Representation of Washington*, 461 U.S. at ——, 103 S.Ct. at 2001–02; *Perry Education Association v. Perry Local Educators' Association*, 460 U.S. 37, 54–55, 103 S.Ct. 948, 959–60, 74 L.Ed.2d 794 (1983); *San Antonio Independent School District v. Rodriguez*, 411 U.S. 1, 17, 93 S.Ct. 1278, 1288, 36 L.Ed.2d 16 (1973).

■ The lines drawn by Congress in defining "qualified heir" for purposes of special estate tax relief bear a rational relation to the legitimate governmental interests of continuing an historically-based preference for blood relatives of a decedent, *see, e.g.*, Ill.Rev.Stat. ch. 110½, § 2–1 (1983); Ind. Code § 29–1–2–1 (1982); N.Y.Est., Powers & Trusts Law § 4–1.1 (McKinney 1981), and protecting the government treasury. The estimated revenue reductions caused by section 2032A as revised in 1981 are: $5 million in 1982, $322 million in 1983, $345 million in 1984, $388 million in 1985, and $386 million in 1986. H.R.Rep. No. 201, 97th Cong., 1st Sess. 179 (1981). Obviously, these revenue losses would increase if Congress extended the definition of qualified heir to include descendants of a decedent's spouse's grandparents—an extension that would be necessary in order for the Tuckers to qualify. Even back in 1976, when section 2032A relief was first designed, it sparked concerns over potentially enormous revenue loss. *See* H.R.Rep. No. 1380, 94th Cong., 2d Sess. 175 (1976) (Comments of Hon. Charles A. Vanik).

---

3. Appellant argues that since the statute deals with a tax on real property, it does affect a fundamental right and therefore should be subject to a more rigorous standard. We do not agree. The statute does not involve the government in a taking of property; it is merely a tax on property. Moreover, the provisions in question afford *relief* from the normal rate of taxation. In this respect it is analogous to a form of subsidy to certain family farms and closely-held businesses. Even though some of the family farms that fail to qualify for section 2032A's special tax treatment may have to be sold, the statute by its terms does not deprive anyone of his property. Many laws have indirect but nonetheless potentially significant effects on property. Such indirect effects do not subject them to strict scrutiny. *See Mapes v. United States*, 576 F.2d 896, 901 (Ct.Cl.), *cert. denied*, 439 U.S. 1046, 99 S.Ct. 722, 58 L.Ed.2d 705 (1978); *cf. Regan v. Taxation with Representation of Washington*, 461 U.S. ——, 103 S.Ct. at 2002–03.

It is unfortunate that this situation admittedly was caused by Ralph and Sara Cowser's chance order of death, but we do not have the power to exercise equitable discretion as a substitute for congressional enactment on the basis of apparent hardship in particular cases. *See Metzger Trust v. Commissioner,* 76 T.C. 42, 80 (1981), *aff'd,* 693 F.2d 459 (5th Cir.1982), *cert. denied,* — U.S. —, 103 S.Ct. 3537, 77 L.Ed.2d 1388 (1983). "Courts are not authorized to rewrite a statute because they might deem its effects susceptible of improvement." *Badaracco v. Commissioner,* — U.S. at —, 104 S.Ct. at 764–765. If Congress did not intend the result in this case, it may amend the words of the statute. In the meantime, the decision of the Tax Court is affirmed.