ESTATE OF WILLIAM C. BETTENHAUSEN, DECEASED ELIZABETH D. BETTENHAUSEN, EXECUTOR, Petitioner v. COMMISSIONER OF INTERNAL REVENUE, Respondent
Estate of Bettenhausen v. Commissioner
Docket No. 24133-82.
United States Tax Court
T.C. Memo 1986-73; 1986 Tax Ct. Memo LEXIS 537; 51 T.C.M. (CCH) 488; T.C.M. (RIA) 86073; February 18, 1986. B. R. Tongren, for the petitioner. David D. Baier, for the respondent. PARR
MEMORANDUM FINDINGS OF FACT AND OPINION PARR, Judge:* Respondent determined a deficiency in petitioner's estate tax of $89,712.42. After concessions by both sides, the sole issue for decision is whether the executor of an estate, who in all other respects has made a valid election to specially value real property under section 2032A, [1] is deprived of the benefit of that statute because noninheriting cotenants of the decedent never agreed to the application of section 2032A(c). *540 FINDINGS OF FACT The facts have been stipulated and are so found. The stipulation of facts and attached exhibits are incorporated herein by reference. Petitioner Elizabeth D. Bettenhausen ("petitioner") is the executor of the estate of her deceased husband, William C. Bettenhausen ("decedent"). Petitioner resided in Peotone, Ill., at the time of the filing of the petition herein. The return for the Federal estate tax of the Estate of William C. Bettenhausen was filed with the Internal Revenue Service at Kansas City, Mo.
Decedent died on November 18, 1979. At the time of his death, he owned undivided one-third interests in five parcels of farm land comprising approximately 678 acres. Each of decedent's brothers, Earl and Wesley Bettenhausen, likewise owned an undivided one-third interest in each of the five parcels. The decedent devised his undivided one-third interests in the farm land to his surviving spouse and children. Decedent's estate tax return was filed on August 15, 1980. At that time, petitioner, in determining the value of decedent's gross estate, chose to value under section 2032A the decedent's interests in the subject farm land. That statute allows a special *541 valuation for real property of the type involved here. To comply with section 2032A, petitioner endeavored to obtain the signatures of decedent's brothers on a written agreement entitled " IRC Section 2032A Agreement." This agreement, in which the signatories consent to the contingent imposition of an additional estate tax, described the property for which an election was being attempted as "an undivided one-third interest in farm property" identified as the five parcels comprising the entire 678 acres of farm land. The decedent's brothers refused to execute the section 2032A(d)(2) agreement. The agreement, therefore, was signed only by decedent's widow and all four of his children. With the return and agreement described above, a document was filed entitled "Election of Special Use Valuation as Authorized by Section 2032A of the Internal Revenue Code." In the election, the fair market value of decedent's one-third interests was declared to be $707,667 and the special use valuation under section 2032A was declared to be $166,268. The fair market value figure was supported by an appraisal report prepared by John H. Weitendorf, *542 a Joliet, Ill., Realtor-Appraiser. On March 31, 1981 petitioner filed suit in the Circuit Court of Will County, Illinois to partition the 678 acres. In July of 1981, in settlement of that suit, petitioner acquired a fee simple interest in two of the five parcels which comprised the 678 acres. These two parcels totaled 273 acres. On August 3, 1981, petitioner filed an amended estate tax return and again sought to elect special use valuation under section 2032A for the realty then owned in fee by decedent's estate. This return also was filed with an election and an agreement, documents similar to the ones described above as having been filed with the original return. These documents differed from the ones filed previously in that the property descriptions contained therein described the two parcels received in settlement of the partition suit, not the undivided one-third interests in the five parcels totaling 678 acres. [2]
*543 On August 23, 1982, respondent mailed petitioner a statutory notice of deficiency. This notice increased the value of the real estate component of decedent's gross estate by $541,399, representing the difference between the fair market valuation and special use valuation figures. After adjustments, respondent determined a deficiency of $89,712.41 in the estate tax liability as computed by petitioner. OPINION To determine the value of a decedent's gross estate, the value of property includable therein is normally determined by valuing the property at its highest and best use. See Estate of Cowser v. Commissioner,736 F.2d 1168, 1170 (7th Cir. 1984), affg. 80 T.C. 783 (1983). Alternatively, section 2032A allows a decedent's executor to value inherited "qualified real property" (as that term is defined in section 2032A(b)) [3] on the basis of the property's actual use at the time of decedent's death. See Estate of Cowser v. Commissioner,supra;Martin v. Commissioner,84 T.C. 620, 625-629 (1985). One requirement for *544 taking advantage of such alternate valuation is that the executor must file the agreement described in section 2032A(d)(2). Sec. 2032A(a)(1)(B). Section 2032A(d)(2) provides: (2) Agreement.--The agreement referred to in this paragraph is a written agreement signed by each person in being who has an interest (whether or not in possession) in any property designated in such agreement consenting to the application of subsection (c) with respect to such property. Section 2032A(c) provides that if, within a prescribed period of time, any interest in the alternatively valued "qualified real property" is disposed of by a "qualified heir." (as that term is defined in section 2032A(e)(i)) to a nonfamily member or such heir ceases to use such property for a "qualified use" (as that term is defined in section 2032A(b)(2)), *545 there will be imposed an additional estate tax. Section 6324B(a) secures that additional tax by imposing a statutory lien with the following language: (a) General Rule.--In the case of any interest in qualified real property (within the meaning of section 2032A(b)), an amount equal to the adjusted tax difference attributable to such interest (within the meaning of section 2032A(c)(2)(B)) shall be a lien in favor of the United States on the property in which such interest exists. The legislative history to section 2032A reflects a recognition by Congress that to pay an estate tax liability based on a highest and best use valuation of family farm or business real property, heirs may have to terminate use of the property as a family farm or business. See Staff of the Joint Comm. on Taxation, General Explanation of the Tax Reform Act of 1976, 536-537 (1976), 1976-3 C.B. (Vol. 2) 548-549 (hereinafter "Joint Comm. Rept."). Congress thought it desirable, however, to encourage the use of property for family farms and other business purposes. Joint Comm. Rept., supra at 536-37. *546 Congress also realized that section 2032A would allow for a windfall if the alternate valuation was used and the property was soon sold or ceased to be utilized in the manner which allowed for the alternate valuation. Joint Comm. Rept., supra at 537. Hence, the additional estate tax recapture and lien described above were provided for in sections 2032A(c) and 6324(B), respectively. However, [t]he Congress believed that each person receiving an interest subject to potential recapture should agree to this potential liability, especially since that person may not have received the tax benefits from the special use valuation (because, for example, the estate tax burden is borne by a residuary legatee who did not receive farm property). Joint Comm. Rept., supra at 543. The section 2032A(d)(2) agreement was, therefore, provided for. Petitioner argues that she has complied with the law because decedent's widow and children have all signed the section 2032(A) agreement, and they constitute "each person in being who has an interest * * * in any property designated in such agreement." Sec. 2032A(d)(2). Petitioner argues further that if its initial election is insufficient, *547 its election submitted with its amended return is sufficient. Finally, petitioner contends that section 20.2032A-8(c)(2), Estate Tax Regs., is unreasonable as it pertains to the facts in this case, and should be ignored or stricken. Respondent contends that under section 20.2032A-8(c), Estate Tax Regs., decedent's brothers were required to assent to any valid section 2032A election. Respondent further contends that petitioner's second election cannot be valid, because the property partition after decedent's death cannot retroactively alter the necessary subject of the election, viz., property owned at the date of decedent's death. Respondent finally argues that regulation section 20.2032A-8(c)(2) carries out the congressional mandate of section 2032A in proper manner. The sole issue presented here was dispositively decided by this Court just last year. See Estate of Pullin v. Commissioner,84 T.C. 789 (1985). In Estate of Pullin we held invalid section 20.2032A-8(c)(2), Estate Tax Regs., insofar as it requires a taxpayer to obtain the signatures of noninheriting cotenants on the section 2032A agreement. In Estate of Pullin we limited our opinion to *548 the case of surviving tenants in common, and expressed no opinion as to cases involving either joint tenants with right of survivorship or community property. Because no relevant factual difference between this case and Estate of Pullin has been brought to our attention, we hold for petitioner. To reflect concessions by the parties, and to allow petitioner to take into account the $500,000 ceiling of section 2032A(a)(2) (see n. 2, supra), Decision will be entered under Rule 155.
Footnotes
*. By order of the Chief Judge, this case was reassigned from Judge Charles R. Simpson to Judge Carolyn Miller Parr↩. 1. Unless otherwise noted, all section references are to the Internal Revenue Code of 1954, as amended and in effect at the date of decedent's death.↩
2. We note that on the amended return, petitioner took cognizance of the sec. 2032A(a)(2) $500,000 limit on the amount by which the special use valuation could decrease the gross estate, added to the special valuation figure the amount by which the decrease in the gross estate attributable to sec. 2032A↩ exceeded $500,000 and adjusted the real estate component of the gross estate figure on the amended return accordingly.
3. Respondent concedes that the farm land in question was qualified real property in all respects, except he objects that no valid agreement, as described in the text, was filed.↩