ESTATE OF IRMA M. LIGON CONE, DECEASED, JIMMY CECIL CONE, EXECUTOR, Petitioner v. COMMISSIONER OF INTERNAL REVENUE, Respondent
Estate of Cone v. Commissioner
Docket No. 37390-87
United States Tax Court
T.C. Memo 1990-359; 1990 Tax Ct. Memo LEXIS 376; 60 T.C.M. (CCH) 137; T.C.M. (RIA) 90359; July 16, 1990, Filed Decision will be entered under Rule 155. Rory A. Boatright, for the petitioner. Phillip A. Pillar, for the respondent. RAUM, Judge. RAUM
MEMORANDUM OPINION The Commissioner determined a deficiency in decedent's Federal estate tax in the amount of $ 125,817. After concessions the two issues left for decision are whether Jimmy Cecil Cone (Jimmy) is a "qualified heir" with respect to the decedent, as that term is defined in section 2032A of the Internal Revenue Code, [1] and, if he is not a "qualified heir" with respect to the decedent, what portion of the real property listed as items 1-4 on Schedule A of decedent's estate tax return passed to Jimmy from the decedent. The case was submitted on the basis of a stipulation of facts. Irma M. Ligon Cone (decedent) and her late husband, O. L. Cone, owned certain items of residential property in the city of Llano, Texas, which were reported as items 5 and 6 of Schedule A of her estate tax return. They also owned a ranch of approximately 722.2 acres in *377 Llano county, reported as items 1-4 of Schedule A of the return. One-half of the ranch, or 361.1 acres, was purchased by decedent and her husband during their marriage and was thus community property. [2] The remaining 361.1 acres was received by her husband in a settlement of inherited property, making that portion his separate property. [3] Decedent and O. L. Cone, who were childless, executed a joint and mutual will on February 6, 1964. Decedent's sister and two brothers and O. L. Cone's nephew, Jimmy, were the named beneficiaries in that will. The various parcels of residential property (items 5 and 6 of Schedule A of the return) were devised to decedent's siblings. The residue of the estate went to Jimmy. O. L. Cone died on February 12, 1969. After his death, decedent lived and worked on the ranch until the latter part of 1970 when she was diagnosed as having Alzheimer's disease. She continued to live at the ranch, cared for by a brother, until the middle of 1971 when she was placed in a nursing home. She then lived in various nursing homes until the date of her death on November *378 13, 1984, domiciled in Texas. Jimmy, who was also a resident of Texas, became the executor of the will. As residuary beneficiary, he inherited the ranch which was part of the residue of the estate. The 722.2 acre ranch consisted of the four parcels which were reported as items 1-4 on Schedule A of the decedent's estate tax return, and special use valuation under section 2032A was elected for the ranch on Schedule N. In the notice of deficiency the Commissioner stated "it is determined that Jimmy Cecil Cone is not a qualified heir within the meaning of section 2032A of the Internal Revenue Code. As [a] consequence, the requirements of section 2032A * * * are not met to allow the special use valuation method elected on the estate tax return." At the time the petition in this case was filed, Jimmy, petitioner's executor, had his legal residence in Llano, Texas. I. Is Jimmy a "qualified heir" within the meaning of section 2032A?Section 2032A was adopted as a part of the Tax Reform Act of 1976 to provide an alternative to "highest and best use" for valuing real property used in family farming operations or closely held businesses. Tax Reform Act of 1976, Pub. L. 94-455, sec. 2003(a), *379 90 Stat. 1856; Estate of Strickland v. Commissioner, 92 T.C. 16, 21 (1989). To qualify for special use valuation under section 2032A, the real property must pass to a "qualified heir" of the decedent. Section 2032A(e)(1) defines "qualified heir" as "a member of the decedent's family who acquired such property (or to whom such property passed) from the decedent." Section 2032A(e)(2) defines the term "member of the family" as follows: (2) MEMBER OF FAMILY. -- The term "member of the family" means, with respect to any individual, only -- (A) an ancestor of such individual, (B) the spouse of such individual, (C) a lineal descendant of such individual, of such individual's spouse, or of a parent of such individual, or (D) the spouse of any lineal descendant described in subparagraph (C). For purposes of the preceding sentence, a legally adopted child of an individual shall be treated as the child of such individual by blood. Petitioner has stipulated that Jimmy is the son of a sibling of decedent's husband and is a nephew of decedent only by marriage. As the nephew of her husband, Jimmy is not a "member of the family" as defined in section 2032A(e)(2). Indeed, petitioner does not argue *380 that Jimmy fits within any of the categories of "member of the family" specifically set forth in 2032A(e)(2). Petitioner does argue, however, that "Decedent, O. L. Cone and Jimmy Cecil Cone are typical of the farm family that the relief provisions of I.R.C. Section 2032A were intended to help." We hold that these statutory provisions do not apply here, and that Jimmy is not a "qualified heir" so as to permit the special use valuation authorized by section 2032A. In Estate of Cowser v. Commissioner, 80 T.C. 783 (1983), affd. 736 F.2d 1168 (7th Cir. 1984), it was held that the decedent's predeceased spouse's grandniece and her husband were not "qualified heir[s]" within the provisions of section 2032A(e)(2) as it stood in 1978 when the decedent died. Those provisions then read: The term "member of the family" means, with respect to any individual, only such individual's ancestor or lineal descendant, a lineal descendant of a grandparent of such individual, the spouse of such individual, or the spouse of any such descendant. For purposes of the preceding sentence, a legally adopted child of an individual shall be treated as a child of such individual by blood. The comparable provisions *381 in section 2032A(e)(2) applicable to the decedent herein, who died in 1984 are set forth, supra at p. 4. These later provisions were introduced into the Code by section 421(i) of the Economic Recovery Tax Act of 1981, Pub. L. 97-34, 95 Stat. 172, 312, which replaced the prior version of section 2032A(e)(2) with the revised version quoted above at p. 4. The Cowser estate contended that the clause "a lineal descendant of a grandparent of such individual [i.e., of the decedent]" in the version of section 2032A(e)(2) then applicable must be interpreted to include also a lineal descendant of a grandparent of such individual's spouse. The Cowser estate also made the argument, similar to one that petitioner makes herein, that the grandniece and her husband were "a prime example of the people Congress intended to benefit by enacting section 2032A." Estate of Cowser v. Commissioner, 736 F.2d at 1171. This Court and the Court of Appeals rejected both of those contentions. It was held not only that the grandniece and her spouse were not "qualified heir[s]" under the plain language of section 2032A as it then stood, but also that when Congress amended section 2032A(e)(2) in 1981, it paid *382 specific attention to members of a spouse's family, indicating that the law prior to the 1981 amendment did not include members of a spouse's family. To the extent relevant here, the 1981 amendment expanded prior law merely to the limited extent of including the spouse's lineal descendants within the definition of "member of the family." Both this Court (see 80 T.C. at 787 n. 3) and the Court of Appeals called specific attention to reports of Congressional committees that such was the understanding of Congress as to the restrictive coverage of the earlier provisions and to the specifically limited scope of the expanded coverage of the revised provisions. The Court of Appeals stated (736 F.2d at 1172): The legislative history of the Tax Incentive Act of 1981, which made several technical changes in section 2032A, further supports our conclusion that "qualified heir" does not include a decedent's spouse's grandniece or grandnephew. Under its description of the law as it existed before the 1981 amendments *** Congress noted that the term qualified heir "does not include members of a spouse's family." H.R.Rep. No. 201, 97th Cong., 1st Sess. 165 n.4 (1981). Congress then extended the *383 meaning of qualified heir to include the lineal descendants of a decedent's spouse * * * but not lineal descendants of a spouse's grandparents. Thus, Congress itself has stated that section 2032A, as in effect at the time of Ralph Cowser's death did not include members of a decedent's spouse's family within the definition of "qualified heirs." And even when Congress acted to include members of the decedent's spouse's family, Congress did not extend the definition of qualified heir beyond a spouse's lineal descendants * * *. Cowser points the way to the correct disposition of this issue in the present case. Jimmy is not a "qualified heir" with respect to the decedent. When Congress expanded section 2032A(e)(2) in 1981, it did not enlarge those provisions to include the lineal descendants of a spouse's parents or grandparents. To the extent relevant here, it expanded the provisions by including descendants of the decedent's spouse; it did not go further to include descendants of a parent or grandparent of decedent's spouse. Jimmy is a descendant of decedent's spouse's sibling or of the spouse's parent. He does not come within the highly specific provisions of the applicable statute. *384 As the Court of Appeals stated in Cowser (736 F.2d at 1171): "We may only interpret and enforce the laws Congress gives us; we may not rewrite or amend them as we see fit." Petitioner also argues that Jimmy is a "qualified heir" of the decedent due to one of the stipulations the parties agreed upon. The parties' eleventh stipulation states that "the petitioner otherwise qualifies for Special Use Valuation except for the requirement that the qualified real property pass to a qualified heir of the decedent pursuant to Section 2032A(b)(1)(A)(ii) of the Code." [4] *385 Petitioner contends that the Government has conceded in stipulation 11 that Jimmy is a "member of the decedent's family." If petitioner is correct in this respect, then the Commissioner's counsel has conceded the entire case away while still defending the contrary position in the Commissioner's deficiency notice. We hardly think that the stipulation was intended to do any such thing. At most, a fair reading of the stipulation suggests that it was intended to mean no more in this case than that all conditions for the application of section 2032A have been satisfied if Jimmy is a "qualified heir" by reason of being a "member of the [decedent's] family" -- thus leaving open as the only issue in this connection whether Jimmy is a "member of the family." Moreover, if the stipulation were intended to fix Jimmy's status as a "qualified heir" and a "member of the family" under section 2032A(e)(1) and (2), it would amount to a stipulation of law. And we would not be required to accept it, where, as here, it is clearly contrary to the record before us. Such has *386 long been recognized, see, e.g., Estate of Viola F. Saia, 61 T.C. 515, 519-520 (1974), and was most recently observed by this Court in Bokum v. Commissioner, 94 T.C. 126, 143 (1990).Petitioner's argument based on stipulation 11 is without merit. II. What portion of the 722.2 acre ranch passed to Jimmy from the decedent? The estate tax return reported the entire 722.2 acres (items 1-4 of Schedule A) as property passing from the decedent. In anticipation of our holding, as we have just done, that the ranch is ineligible for special use valuation; petitioner now contends that only 180.55 acres of the ranch should be included in decedent's estate as passing from her to Jimmy. In substance, petitioner argues that 361.1 acres (one-half the ranch) was the separate property of decedent's predeceased husband which he had inherited, that the remaining 361.1 acres was community property purchased by him and decedent, so that at the time of his death he owned three-fourths of the 722.2 acres and decedent owned only one-fourth, or 180.55 acres, which was properly includable in her estate. According to petitioner, the decedent did not inherit her husband's three-fourth's interest from him but *387 received only a life estate therein under the joint and mutual will, and that consequently only her one-fourth, or 180.55 acres, passed from her to Jimmy. The crux of this aspect of the case is whether decedent inherited in fee simple from her husband his three-fourths interest in the ranch. The answer depends upon the interpretation of the will under applicable Texas law. Morgan v. Commissioner, 309 U.S. 78, 80-81 (1940); cf. Commissioner v. Estate of Bosch, 387 U.S. 456, 457, 462-466 (1967)("Federal authorities are not bound by the determination" of a lower state court, and, if there is no decision by the state's highest court, must determine what is found to be state law after giving proper regard to relevant rulings of other courts of the state). The central controversy between the parties involves the proper interpretation, under Texas law, of paragraphs II and V of the joint and mutual will. These paragraphs read as follows: II. It is our will and desire, and we hereby give, devise and bequeath unto the survivor of us in fee simple, all of the property, both real and personal, of which either of us shall be seized and possessed at the time of our respective deaths, to be *388 used, occupied, enjoyed, conveyed and expended by such survivor, as such survivor shall desire. * * * V. It is our joint mutual will and desire and we hereby give, devise and bequeath, upon the death of the survivor of us and after the payment of all of our just debts, all the rest and residue of the property whether real or personal remaining in the hands of the survivor of us, intending to include all ranch properties owned by us, to Jimmy Cecil Cone, the nephew of O. L. Cone, in fee simple forever. It is our will and desire and we hereby direct that our debts and obligations that may be due and owing at the death of the survivor of us shall be paid from the properties herein devised and bequeathed to the said Jimmy Cecil Cone. Petitioner recognizes that paragraph II "seemingly gives the survivor a fee simple interest in the entire estate," but then adds that if that "was the intent of the parties, then the language 'to be used, occupied, enjoyed,' would not be necessary. Although extra wording alone is not sufficient to limit a fee simple interest, the use of standard life-estate language does give some insight as to the intent of the makers." The essence of petitioner's position *389 is that paragraph V was intended to give Jimmy a vested remainder in his uncle's three-fourths fee simple interest in the ranch, that it is irreconcilably in conflict with paragraph II, and that under Texas law in such circumstances, the later provision of the will is controlling as to the testators' intent, citing in this connection, Rev. Rul. 77-98, 1977-1 C.B. 288. The parties both agree that decedent and O. L. Cone's will is a "joint and mutual" will. A joint and mutual will creates contractual obligations between the signing parties to dispose of the property according to a comprehensive plan. Nye v. Bradford, 144 Tex. 618, 193 S.W. 2d 165 (1946). The joint and mutual will is irrevocable upon the death of one spouse. Fisher v. Capp, 597 S.W. 2d 393, 399-400 (Tex. Civ. App. 1980), writ refused, no reversible error. Our "primary object of inquiry in interpreting [the] will is [to determine] the intent of the testator[s]." Gee v. Read, 606 S.W. 2d 677, 680 (Tex. 1980). This intention must be ascertained from the language used within the four corners of the instrument. Shriner's Hospital v. Stahl, 610 S.W. 2d 147, 151 (Tex. 1980).But the instrument must be read as a whole, and *390 not just isolated parts thereof. Guilliams v. Koonsman, 154 Tex. 401, 279 S.W. 2d 579 (1955).Moreover, since the "sense in which the words were used by the testator[s] is the ultimate criterion," extrinsic evidence "concerning the situation of the testator[s], the circumstances existing when the will was executed, and other material facts" may be taken into account to "assist the court in determining the sense in which the words were used." Stewart v. Selder, 473 S.W. 2d 3, 7 (Tex. 1971). The will before us consists of six paragraphs. Paragraph I directs the executors to pay the testators' debts. Paragraph III names the first surviving spouse as executor and paragraph VI names the executors upon death of the survivor. Paragraphs II, IV, and V address the disposition of the testators' property. Paragraphs I-IV and paragraph VI of the will are clear. Paragraph II of the will, quoted supra at page 10, clearly gives a fee simple in all of the property owned by each spouse to the surviving spouse. We do not view the directive in paragraph II that the property is to be "used, occupied, enjoyed, conveyed, and expended" by the surviving spouse as a limitation on the fee simple given. *391 E.g., Reed v. Reed, 569 S.W. 2d 645, 647 (Tex. Civ. App. 1978).Decedent and her husband each had collateral relatives living at the time they executed their will. Paragraph IV devises residential property remaining in the hands of the surviving spouse at the time of that spouse's death to the wife's sister and brothers. [5] The estate held by the surviving spouse, as a result of paragraph IV, is a conditional or defeasible fee simple, the condition of defeasance being that if the surviving spouse still owns that residential property at the time of death, then that property must pass to the wife's siblings. Harrell v. Hickman, 147 Tex. 396, 215 S.W. 2d 876 (1948). The meaning of paragraph V is at the heart of this case. In ascertaining that meaning, we must take into account not only the will as a whole but also the circumstances existing at the time the will was executed. Stewart v. Selder, supra. Those circumstances, as shown by the record, reveal that decedent was 66 years old on February *392 6, 1964, when she and her husband executed their joint and mutual will. The couple had no children. At that time neither spouse knew what the future might hold in store for them. They did not know who would be the first to die, how long thereafter the survivor might continue to live, what the state of health of the survivor might be, or what resources might be needed by the survivor in view of possible medical needs that could conceivably extend over a long period of years. [6] There is no dispute that paragraphs II and IV both give the survivor the right to dispose of the couples' property during his or her life in any way the survivor might see fit. These paragraphs are internally consistent and evidence an intent on the part of each testator to make the other spouse the principal object of his or her bounty and ensure that the surviving spouse had the unlimited right during his or her remaining life to use, occupy, enjoy, convey, and expend all of the couple's combined property, bearing in mind that the only other natural objects of their bounty were collateral relatives. The only limitation in either of these paragraphs is the limitation on testamentary disposition of the property *393 remaining at the death of the surviving spouse. In our view, the same considerations are applicable to paragraph V. In the first sentence of paragraph V, the testators "give, devise and bequeath, upon the death of the survivor of us and after the payment of all of our just debts, all the rest and residue of the property whether real or personal remaining in the hands of the survivor of us, intending to include all ranch properties owned by us, to Jimmy Cecil Cone, the nephew of O. L. Cone, in fee simple forever." The second and last sentence directs that "our debts and obligations that may be due and owing at the death of the survivor of us shall be paid from the properties herein devised and bequeathed to the said Jimmy Cecil Cone." Petitioner argues that the *394 specific identification of the ranch properties after the clause referring to property remaining in the hands of the survivor shows that decedent "was bound [by paragraph V] to have it [the ranch] in the residue of her estate." Thus, petitioner argues, paragraph V was intended to give Jimmy a vested remainder interest in the ranch after the life estate of the surviving spouse, which would conflict irreconcilably with the fee simple estate given the surviving spouse in paragraph II. The Government argues that there is no conflict; that paragraph V, in a manner similar to paragraph IV, merely limits the surviving spouse's testamentary disposition of the ranch property -- i.e., that the surviving spouse's otherwise absolute fee simple interest is defeasible merely in the sense of restricting that spouse's right to make a testamentary disposition of the ranch contrary to the will. In Texas, as elsewhere, the courts have developed a number of rules of construction to aid them in attempting to ascertain the intention of a testator in an ambiguous clause. Welch v. Straach, 531 S.W. 2d 319, 322 (Tex. 1975). Under Texas law, a will should be construed so as to give effect to every part of *395 it, if the language is reasonably susceptible of that construction. Perfect UnionLodge No. 10, A.F. and A.M. v. Interfirst Bank, 748 S.W. 2d 218, 220 (Tex. 1988).Further, the largest estate the language of the will is capable of conveying must be accepted over that of a lesser estate, unless it clearly appears that a lesser estate was intended. Tex. Prop. Code Ann. sec. 5.001(a) (Vernon 1984), (formerly Tex. Rev. Civ. Stat. Ann. art. 1291 (Vernon 1980)); Bergin v. Bergin, 159 Tex. 83, 315 S.W. 2d 943, 946 (1958).Where there is ambiguity in a will as to a limitation attempted or doubt as to its application, the larger estate will vest. Waters v. Ellis, 158 Tex. 342, 312 S.W. 2d 231, 234 (1958). Paragraph II gives decedent a fee simple in the ranch. Paragraph IV clearly gives residential property in the surviving spouse's estate to the wife's siblings. The parties agree that there is no conflict between paragraphs II and IV. Paragraph V is clearly a residuary clause. O. L. Cone's nephew, Jimmy Cecil Cone, is the residuary beneficiary. In paragraph V the testators specifically mention "ranch properties" and in the second and last sentence thereof direct that all of their debts *396 and obligations are to be paid from the "properties herein devised and bequeathed" to Jimmy. This sentence makes clear that the "ranch properties," although specifically mentioned, are merely part of the residuum. In this connection, we note that the testators used the term "devised and bequeathed" which refers to both real and personal property tentatively passing to Jimmy as part of the residue, subject fully to invasion for the payment of debts prior to the final determination of what is actually to go to Jimmy. Had the testators intended to give Jimmy a remainder interest in the ranch that would vest upon the death of the first testator and become an interest in fee simple upon the death of the second, they could easily have so stated. Instead, Jimmy was given the residue of the estate which included the ranch, subject to all obligations including possibly extensive medical debts incurred on behalf of the surviving spouse. The surviving spouse certainly had more than a mere life estate in the various items constituting the residue. Reading the will as a whole, it is our conclusion that paragraph V was not intended to restrict invasion by the surviving spouse. Paragraph V is *397 merely a residuary clause which makes clear that the ranch is part of the residue. Even when considered with a view to supporting petitioner's position, paragraph V is at most ambiguous, and thus is not "clearly in conflict" with paragraph II, which concededly gives the surviving spouse a fee simple interest in the entire estate. Petitioner cites Rev. Rul. 77-98, 1977-1 C.B. 288, stating that the situation in that revenue ruling is similar to the situation herein. We disagree. Apart from whether revenue rulings may be thought not to constitute substantive authority for a position, Stark v. Commissioner, 86 T.C. 243, 251 (1986), this revenue ruling addresses clauses in a will which are considered to be in clear conflict with one another and cannot be harmonized. The situation here involves at most an ambiguous residuary clause that will conflict with earlier provisions in the will only if the will is not read as a whole in the light of the circumstances existing at the time of its execution. We hold that decedent became the fee simple owner of the entire ranch at her husband's death, composed of her one-half community property interest in the 361.1 acres purchased by the spouses, *398 together with her husband's other half of that community property plus his separate 361.1 acres which he had acquired by inheritance. Due to concessions as to other items, Decision will be entered under Rule 155. Footnotes
1. Unless otherwise indicated, all section references are to the Internal Revenue Code as amended and applicable to petitioner at the time of the decedent's death.↩
2. Tex. Fam. Code Ann. Sec. 5.01↩(b) (Vernon 1975).
3. Tex. Fam. Code Ann. Sec. 5.01↩(a)(2) (Vernon 1975).
4. (b) QUALIFIED REAL PROPERTY. -- (1) IN GENERAL. -- For purposes of this section, the term "qualified real property" means real property located in the United States which was acquired from or passed from the decedent to a qualified heir of the decedent and which, on the date of the decedent's death, was being used for a qualified use by the decedent or a member of the decedent's family, but only if -- (A) 50 percent or more of the adjusted value of the gross estate consists of the adjusted value of real or personal property which -- (i) on the date of the decedent's death, was being used for a qualified use by the decedent or a member of the decedent's family, and (ii) was acquired from or passed from the decedent to a qualified heir of the decedent.↩
5. The parties agree that the surviving spouse had the unlimited right to dispose of the residential property during life and that the value of this property is includable in decedent's estate.↩
6. Indeed, in this very case, the surviving spouse lived some 14 years after having been diagnosed as having Alzheimer's disease. Although there did not appear to have been any invasion of principal during that period, it is not difficult to imagine that a conscientious, independent guardian could easily have depleted the entire estate for her benefit, taking into account well known high charges for private nursing care, etc.↩