ESTATE OF FRANCES E. WHERRY MADDOX, DECEASED,
JOSEPH C. MADDOX, AND MARGARET E. LALE,
COEXECUTORS, PETITIONER *v.* COMMISSIONER
OF INTERNAL REVENUE, RESPONDENT

Docket No. 9134-87.      Filed August 10, 1989.

*John S. Elias,* for the petitioner.
*Richard A. Stone* and *Jeff P. Ehrlich,* for the respondent.

RAUM, *Judge:* The Commissioner determined a deficiency
in Federal estate taxes against the Estate of Frances E.
Wherry Maddox in the amount of $300,900.

The decedent held a minority (35.5-percent) interest in an
incorporated family farm. After certain concessions, the
remaining issue is whether a 30-percent discount, otherwise
applicable in determining the "fair market value" of the
decedent's minority interest in the incorporated farm, is
also applicable in valuing her interest therein for inclusion
in the gross estate after the value of the farm has been
substantially reduced by the application of the special use
provisions of section 2032A[1] to the real estate which

[1]Unless otherwise indicated, all section references are to the Internal Revenue Code as in
effect at the time of the decedent's death or are otherwise applicable in determining the estate
tax in issue.

constituted the principal asset of the farm. The case was submitted on the basis of a stipulation of facts.

Frances E. Wherry Maddox died on May 1, 1983, a resident of Illinois. Her husband, Clarence C. Maddox, qualified as the executor of her estate. He has since died, and their two children, Joseph C. Maddox and Margaret E. Lale, have been appointed as coexecutors. Clarence C. Maddox and decedent incorporated Maddox Farms, Inc. (the corporation or the farm) in 1973, and since that date it has been engaged in the business of farming. Upon incorporation, they each received 500 of the 1,000 total issued and outstanding shares of common stock. Each of them thereafter transferred stock to their two children at various times so that on May 1, 1983, the 1,000 shares were owned as follows:

| | |
|---|---|
| Decedent | 355 shares |
| Clarence C. Maddox | 361 shares |
| Joseph C. Maddox (son) | 142 shares |
| Margaret E. Lale (daughter) | 142 shares |
| Total | 1,000 shares |

Petitioner, the decedent's estate, reported the value of decedent's shares on its timely filed estate tax return at $222,024, based upon a buy/sell agreement among the stockholders. It no longer seeks to support that valuation, but relies rather upon a special use valuation claimed under section 2032A that is applicable to the real property of a family farm or other closely owned business. It had made a protective election in its return to avail itself of that special use valuation. In the notice of deficiency, the Commissioner valued decedent's shares at $968,266 based upon his determination that such was their "fair market value." He no longer relies on that figure or a value equal to the "fair market value" of the shares. There is now no dispute that the special use valuation of section 2032A plays a part in arriving at the amount to be included in the gross estate in respect of decedent's 355 shares.

The parties are in agreement that section 2032A is applicable in valuing the real property of the farm, and that petitioner timely and properly perfected an election to have that section apply "in valuing the 355 shares in the corporation owned by the decedent." The parties have

further agreed that a minority interest discount of 30 percent is applicable in arriving at the "fair market value" of the 355 shares. The precise matter in dispute is whether that 30-percent *fair market value* discount is applicable to decrease the *value* of the 355 shares includable in the gross estate once their value has already been substantially reduced below their fair market value as a result of the section 2032A special use valuation of the farm's real property.

At the date of death, the assets of the farm consisted of three classes of property: cash, equipment, and real property, and the parties have stipulated that the net "fair market value" of these assets combined was $2,442,000, without regard to any valuation discounts. The parties have treated that amount as being the full fair market value of the entire Maddox farm without any suggestion that such value (based solely on the underlying assets) might be affected by earnings or any other factor. And they have also treated the decedent's 355 shares as having a fair market value equal to their pro rata portion of the sum of those assets, without taking into account any downward adjustment for the fact that they represent a minority interest. Thus, the parties have stipulated that the fair market value of the decedent's 355 shares, without any minority interest discount, was $866,910, her 35.5-percent pro rata portion of the $2,442,000 fair market value of the entire farm. Further, they have agreed that, upon applying the 30-percent minority interest discount, those 355 shares had a fair market value of $611,310. It is this latter amount that is properly includable in the gross estate in respect of the 355 shares if section 2032A were not used.

At the election of an estate, and subject to a number of conditions, section 2032A authorizes the use of a value for a farm's real estate that is radically different from its fair market value. Of the stipulated $2,442,000 net fair market value of all three categories of assets of the Maddox farm in this case, the real estate alone had a fair market value of at least $2,319,470.[2] However, the parties have agreed that,

---

[2]This latter figure does not appear in the record, but is derived from figures stipulated by the parties. They stipulated that the corporation had total indebtedness of $198,939, and that the cash and equipment amounted to $77,351 and $45,179, respectively. Thus, if the cash and equipment are subtracted from the stipulated net fair market value of all three classes of

upon recalculating the value of the real estate of the farm pursuant to section 2032A, the net "value" (not fair market value) of all three classes of assets combined was $1,376,041. The parties are also in agreement that, as a result of the section 2032A recomputation, the decedent's 355 shares have a revised "value" for estate tax purposes of $488,495 (35.5 percent × $1,376,031). That is the amount that may properly be included in the decedent's gross estate as the value of her 355 shares, apart from any minority interest discount. If the stipulated 30-percent minority discount for determining *fair market value* is applicable here, the amount includable in the gross estate would be further reduced to $341,946.50 (70 percent × $488,495). That is the amount contended for by petitioner. However, the Government insists that since the amount to be included in the gross estate after the application of section 2032A is not one based on fair market value, it is inappropriate to reduce that amount by a minority interest discount that is relevant only in determining fair market value. We concur.

As agreed by the parties, the value of the shares of the Maddox farm is merely their pro rata portion of all the assets of the farm. But the total "value" of those assets no longer reflects their total "fair market value" after the real estate has been revalued downward through the application of section 2032A. Thus, the "value" of 355 shares, as substantially decreased by the application of section 2032A to the real estate, the principal asset of the farm, is not their "fair market value." Accordingly, the 30-percent minority interest discount, which would otherwise be applicable to reduce the "fair market value" of the shares, has no application whatever to shrink further a value that is already substantially less than and is unrelated to their fair market value.

Section 2032A was added to the Code by the Tax Reform Act of 1976, sec. 2003, Pub. L. 94-555, 90 Stat. 1520, 1856.

---

assets ($2,442,000), the remaining $2,319,470 would equal the net fair market value of the real estate. However, that figure necessarily assumes that the $198,939 indebtedness, upon being subtracted from the combined *gross* fair market value of all the assets to yield a *net* fair market value of $2,442,000 of all the combined assets, was allocable solely to the real estate. If only part of the indebtedness were allocable to the real estate, the net fair market value of the real estate would be even greater than $2,319,470. The record does not disclose how the indebtedness should be allocated.

Although it originally focused primarily on family farms when it first appeared in a revised Senate version of the bill, see S. Rept. 94-938, (Part 2) at 14-16, it was later expanded in the Conference Committee to include other closely held businesses, see H. Rept. 94-1380 at 21 et seq. To simplify discussion, we will treat section 2032A as though it relates solely to family farms, which appear to have been the principal matter to which Congress directed its attention and with which most of the cases in this field have been concerned.

Congress was obviously troubled that family farms might have to be sold to pay estate taxes upon death of the owner if the value of the real estate were determined at its fair market value which in turn depended upon its "highest and best use." Since such real estate might well be a tempting target for real estate developers, the "highest and best use" test could result in a valuation based on development purposes substantially in excess of the value of the property for use as a farm, with a concomitant large increase in estate taxes. Continued operation of the family farm might thus be in jeopardy since a sale of the farm might be the only way to meet the increased tax burden. It was to address this problem that section 2032A was enacted.

As was simply put by the court in *Martin v. Commissioner,* 783 F.2d 81, 82 (7th Cir. 1986), affg. 84 T.C. 620 (1985), "The purpose of the statute was to encourage the continuation of family farms after the death of the farm's owner." See also *Mangels v. United States,* 828 F.2d 1324, 1326 (8th Cir. 1987); *Estate of Cowser v. Commissioner,* 736 F.2d 1168, 1170 (7th Cir. 1984), affirming 80 T.C. 783 (1983). The legislative history amply supports this view. See S. Rept. 94-938 (Part 2) at 14-16, 1976-3 C.B. (Vol. 3) at 657; H. Rept. 94-1380 at 21-22, 1976-3 C.B. (Vol. 3) at 755-756; General Explanation of the Tax Reform Act of 1976 prepared by the Staff of the Joint Committee on Taxation at 537 (1976), 1976-3 C.B. (Vol. 2) at 549. The provisions of section 2032A are detailed and complex, many of the highlights of which have been summarized in prior cases. See, e.g., Martin v. Commissioner, 84 T.C. 620, 626 (1985), affd. 783 F.2d 81 (7th Cir. 1986); *Estate of Coon v. Commissioner,* 81 T.C. 602, 607-608 (1983); *Estate of Cowser*

*v. Commissioner*, 80 T.C. 783, 785 (1983), affd. 736 F.2d 1168 (7th Cir. 1984).

It would seem at first blush that the estate might not be entitled at all to the benefits of section 2032A, since the decedent did not own or have any interest in farm real estate dealt with in section 2032A. She owned only shares of stock in a corporation that owned and operated a farm, and indeed those shares were reported in the estate tax return on Schedule B which is concerned with "Stocks and Bonds," not on Schedule A which is concerned with "Real Estate." However, the parties are in agreement that section 2032A is applicable to the real estate of the corporation, and that position must necessarily be based upon subsection (g) of section 2032A. Subsection (g) provides:

(g) APPLICATION OF THIS SECTION AND SECTION 6324B TO INTERESTS IN PARTNERSHIPS, CORPORATIONS AND TRUSTS.—The Secretary shall prescribe regulations setting forth the application of this section and section 6324B in the case of an interest in a partnership, corporation, or trust which, with respect to the decedent, is an interest in a closely held business (within the meaning of paragraph (1) of section 6166(B)). * * *

Although the language of (g) does not explicitly authorize the revaluation of a decedent's stock, it backhandedly tells us that Congress did not want the estate of a stockholder in a family corporation to be deprived of the benefits of section 2032A. However, Congress apparently was not prepared to deal with the myriad problems and situations that could arise in that connection and it directed (not merely authorized) the Secretary to prescribe regulations "setting forth the application of this section" where the decedent had "an interest in a partnership, corporation, or trust." Unfortunately, the Secretary to date has not issued the regulations that he was ordered to prescribe. Some 13 years have now passed since the Congress provided that the Secretary "shall" prescribe the regulations, and at this writing he has not even submitted any proposed regulations. The situation is similar to the one we faced in *Occidental Petroleum Corp. v. Commissioner*, 82 T.C. 819, 829 (1984), and *First Chicago Corp. v. Commissioner*, 88 T.C. 663, 669 (1987), affd. 842 F.2d 180 (7th Cir. 1988), where the regulations there called for had not been issued some 8 and 11 years, respectively, after enactment of the

statute. We repeated in *First Chicago* our critical comment in *Occidental* upon this "sorry situation." See 88 T.C. at 669 and 82 T.C. at 829 n. 6.[3] However, as was the case in *Occidental* and *First Chicago*, we must do the best we can with the statutory provision (subsection (g)) now before us in the absence of pertinent regulations, since, in our view, the Secretary cannot deprive a taxpayer of rights which the Congress plainly intended to confer simply by failing to promulgate the required regulations. But what are those rights?

In our judgment, subsection (g) should be construed to give the estate in this case the same rights that it would have had if the farm had not been incorporated and if the decedent had merely owned a 35.5-percent interest in the farm, including a 35.5-percent interest in its real estate. Absent section 2032A, the fair market value of the decedent's interest to be included in her gross estate would simply be her pro rata portion of the fair market value of the farm subject to reduction for being a minority interest. Since a minority interest in property ordinarily would not command a price in the market equal to its pro rata share of the fair market value of the entire property, an appropriate reduction would be called for to reflect the true fair market value of that minority interest. In this case, the reduction would be 30 percent. But, upon revaluation of the real estate under section 2032A so that it no longer is treated as having a value anywhere near its fair market value, the decedent's pro rata share of that artificially computed value of the entire farm would no longer be a pro rata share of "fair market value," and a discount available only to reflect "fair market value" would not be permissible, in our view.

Petitioner contends, however, that once the real estate has been revalued under section 2032A, it is included in the

---

[3]As we indicated in *Occidental Petroleum Corp. v. Commissioner*, 82 T.C. 819, 829 n. 6 (1984), the Treasury itself is not solely responsible for this situation. Congress itself must bear a share of the responsibility. As a result of its frequent, massive revisions of the Code, enormous burdens have been thrust upon the Treasury to provide rules, guidelines, and regulations to enable taxpayers to adapt to the numerous new statutory provisions. We called attention in *Occidental* at 829 n. 6, to the reported statement of the then Commissioner of Internal Revenue about the "complexities associated with the passage of frequent tax bills," complaining that "We are tied up in knots drafting regulations to explain the frequent changes in law."

reduced amount in computing the total assets of the corporation, and thereafter the *stock* in the corporation must be valued like the stock in all other corporations, subject to a minority interest discount. The argument is fallacious. If it were accepted, the estate would be in a far superior position than what would be the case if the farm had not been incorporated at all. Surely, subsection (g), which was intended at most not to deprive taxpayers of rights otherwise available under section 2032A, was never intended to give them greater rights. We cannot believe that Congress meant to confer any such bonanza. Certainly, had the Secretary promulgated regulations that in effect merely lifted the corporate veil in this situation, they would plainly have to be sustained. Cf. *Martin v. Commissioner,* 783 F.2d 81, 84 (1986), affg. 84 T.C. 620 (1985); *Estate of Gunland v. Commissioner,* 88 T.C. 453, 457 (1987). And lifting the corporate veil is the most that, in our judgment, subsection (g) was intended to accomplish.

The result that we reach is underscored by the agreement of the heirs consenting to the application of section 2032A(c) imposing an additional or recapture estate tax that was required (section 2032A(a)(1)(B) and (d)(2)) to be filed by the estate along with its election of the valuation provided by section 2032A. Such additional or recapture tax was applicable in the event that an heir disposed of his interest within a specified period of years after the decedent's death to someone other than a qualified heir—all intended to preserve the character of the property as a family farm. Thus, each heir in this case agreed to pay the additional or recapture estate tax imposed by subsection (c) of section 2032A "If there is a disposition (other than to a member of his or her family) of any interest which passes or has passed to him or her or if there is a cessation of the qualified use of any specially valued property which passes or passed to him or her." That agreement plainly shows that the shares of stock passing to the heirs were no ordinary corporate shares. It reinforces the conclusion that the artificial value assigned to those shares as a consequence of the application of section 2032A in no way represents their "fair market value" and that a minority interest discount, ordinarily

applicable to arrive at the "fair market value" of corporate shares, is wholly inapplicable to these shares.

We hold that petitioner is entitled to include in the gross estate the value of decedent's interest in the incorporated Maddox farm at the reduced value of $488,495 following the section 2032A recomputation, without any further reduction for minority interest. To reflect concessions in other respects,

*Decision will be entered under Rule 155.*