119 T.C. No. 20


UNITED STATES TAX COURT


JOHN A. FRANCISCO, Petitioner <u>v</u>.
COMMISSIONER OF INTERNAL REVENUE, Respondent


Docket No. 7670-00.                    Filed December 19, 2002.


     Petitioner (P), a U.S. citizen residing in
American Samoa, was employed as chief engineer of a
fishing vessel that operated primarily in international
waters in 1995, 1996, and 1997.

     Sec. 931(a), I.R.C., provides that a resident of
American Samoa may exclude income that is American
Samoan source or effectively connected with a trade or
business in American Samoa (American Samoan source or
effectively connected income).  Sec. 931(d)(2), I.R.C.,
provides that the determination of whether income is
excludable under sec. 931(a), I.R.C., shall be made
under regulations prescribed by the Secretary.

     <u>Held</u>:  American Samoan source or effectively
connected income is excludable from U.S. income by sec.
931(a), I.R.C., even though the Secretary has not
issued regulations under sec. 931(d)(2), I.R.C.

*Held*, *further*, To the extent P's fishing income in 1995, 1996, and 1997 was earned in international waters, it is not American Samoan source or effectively connected income, and it is U.S. source income.

*Held*, *further*, P must include in gross income the amount of State income tax refunds he received in 1995 and 1996.


Daniel R. King and Richard T. Luoma, for petitioner.

Peter C. Rock, for respondent.


COLVIN, Judge:  Respondent determined deficiencies of $18,324, $52,870, and $31,913, and section 6662(a)[1] accuracy-related penalties[2] of $3,665, $10,574, and $6,383, relating to petitioner's 1995, 1996, and 1997 Federal income taxes, respectively.

The issues for decision are:

1.  Whether the section 931(a) exclusion applies even though the Secretary has not issued regulations under section 931(d)(2). We hold that it does.

2.  Whether income earned by petitioner from performing personal services in international waters is American Samoan source or effectively connected income, as petitioner contends,

---

[1]  Section references are to the Internal Revenue Code in effect for the years in issue.  Rule references are to the Tax Court Rules of Practice and Procedure.

[2]  Respondent concedes that petitioner is not liable for the accuracy-related penalty for the years in issue.

or U.S. source, as respondent contends.  We hold that it is U.S. source income.

3.  Whether petitioner must include in gross income the amount of State income tax refunds he received in 1995 and 1996. We hold that he must.

FINDINGS OF FACT

A.  <u>Petitioner</u>

Petitioner was a U.S. citizen residing in American Samoa during the years in issue and when he filed his petition.

B.  <u>Petitioner's Fishing Employment</u>

Petitioner was employed by the De Silva Sea Encounter Corp. (De Silva), a Nevada corporation, as the chief engineer of a tuna fishing vessel (the M/V <u>Sea Encounter</u>).  As chief engineer, petitioner was primarily responsible for the operation, repair, and maintenance of the ship's engine and other machinery, including the refrigeration, storing, and offloading systems designed to ensure the quality of the catch.

Petitioner performed services for the M/V <u>Sea Encounter</u> in an American Samoan port or territorial waters 7 days in 1995, 10 days in 1996, and 11 days in 1997, and in international waters 208 days in 1995, 193 days in 1996, and 272 days in 1997.  Each fishing trip began and ended at a port in American Samoa.  Each trip took from 3 weeks to 3 months.  After the ship left port, it

generally remained at sea until it filled its storage capacity for fish (i.e., 1,150 tons).

The ship returned to port in American Samoa to sell, pursuant to an exclusive contract, the entire catch to the Van Camp Seafood Co. (Van Camp) fish processing plant. De Silva and its workers were paid only for fish accepted by Van Camp. On average, Van Camp rejected about 2 percent of the catch. If Van Camp rejected the entire catch, none of the crew members would be paid.

Petitioner was paid the second highest amount of any crew member. Petitioner was paid $30 per ton and had no right to, or any ownership interest in, the fish. Petitioner was paid in American Samoa. Petitioner was responsible for preparing the ship for each voyage, taking care of the catch, and delivering the fish to the Van Camp cannery in American Samoa. Petitioner's prevoyage duties included making cold water to refrigerate the fish, making brine to store the fish, and ensuring that the engines and machinery were all in order. At the conclusion of each voyage, petitioner was in charge of the hydraulic equipment used to offload the fish as well as the cargo booms, conveyor belts, and other equipment.

On timely filed 1995, 1996, and 1997 returns, petitioner, relying on section 931, excluded wage income relating to his employment with De Silva.

C.  Petitioner's State Tax Payments and Refunds

On his 1994 return, petitioner claimed an $8,708 deduction for California State income taxes paid.  In 1995, petitioner received a $1,150 California State income tax refund.  Petitioner did not report the amount of the 1995 refund on his 1995 Federal income tax return.  On his 1995 return, petitioner claimed a $4,000 deduction for California State income taxes paid.  In 1996, petitioner received a $3,839 California State income tax refund.  On his 1996 return, petitioner reported as income and also deducted that $3,839 refund.

OPINION

The issues for decision are whether petitioner's income earned from services performed in international waters is excludable from income under section 931, and whether he must include in gross income the amount of his State tax refunds.

A.  Provisions in the Tax Reform Act of 1986 Relating to Guam, American Samoa, and the CNMI

1.  Retention and Revision of the Section 931(a) Exclusion

Individuals who are U.S. citizens or resident aliens are taxed by the United States on their worldwide income.  Sec. 1.1-

1(b), Income Tax Regs.  However, an exclusion applies to possessions source income of U.S. citizens who reside in Guam, American Samoa, and the Confederated Northern Mariana Islands (CNMI).  Sec. 931.[3]

Congress amended section 931 in 1986.  Tax Reform Act of 1986 (1986 TRA), Pub. L. 99-514, sec. 1272(a), 100 Stat. 2593. Under section 931 as amended, an individual who is a bona fide resident of a "specified possession"[4] (e.g., American Samoa) during an entire tax year may exclude from gross income (1) income derived from sources within any specified possession, and (2) income effectively connected with the conduct of a trade or business ("American Samoan source or effectively connected income") by that individual within any specified possession. Sec. 931(a).[5]

---

[3]  Before 1986, sec. 931 provided an exclusion from U.S. tax for American Samoan source income received by U.S. citizens, if certain conditions were met.  Specking v. Commissioner, 117 T.C. 95, 102 (2001).

[4]  For purposes of sec. 931(a), specified possessions are Guam, American Samoa, and the Northern Mariana Islands.  Sec. 931(c).

[5]  SEC. 931.  INCOME FROM SOURCES WITHIN GUAM, AMERICAN SAMOA, OR THE NORTHERN MARIANA ISLANDS.

(a) General Rule.--In the case of an individual who is a bona fide resident of a specified possession during the entire taxable year, gross income shall not include--

(1) income derived from sources within
(continued...)

2. Grant to Guam, American Samoa, and the CNMI of Control Over Their Tax Systems

Guam, American Samoa, and the CNMI had a mirror or modified mirror system of taxation for many years before 1986. Under that system, American Samoa, in 1963, adopted substantially all of the Internal Revenue Code of 1954, 11 A.S.C.A. sec. 11.0501,[6] but American Samoans paid the tax to American Samoa, not the United States.

---

[5](...continued)
any specified possession, and

    (2) income effectively connected with the conduct of a trade or business by such individual within any specified possession.

    \*    \*    \*    \*    \*    \*    \*

(d) Special Rules.--For purposes of this section--

    \*    \*    \*    \*    \*    \*    \*

    (2) Determination of source, etc.--The determination as to whether income is described in paragraph (1) or (2) of subsection (a) shall be made under regulations prescribed by the Secretary.

    (3) Determination of residency.--For purposes of this section and section 876, the determination of whether an individual is a bona fide resident of Guam, American Samoa, or the Northern Mariana Islands shall be made under regulations prescribed by the Secretary.

[6] See Boral Gas, Inc. v. Iaulualo, No. CA 87-1 (Am. Samoa Oct. 3, 2002).

In 1986, Congress concluded that the Internal Revenue Code, developed for the complex U.S. economy, may be inappropriate for Guam, American Samoa, and the CNMI.  S. Rept. 99-313, at 477-478 (1985), 1986-3 C.B. (Vol. 3) 477-478.  Thus, except as explained in the next paragraph of this opinion, Congress granted to those possessions control over their local tax systems.  1986 TRA sec. 1271(a), 100 Stat. 2591.

3.    Concerns About the Potential for Abuse Under the Mirror
      System of Taxation

In 1986, Congress also concluded that the mirror systems of tax then in effect in Guam, American Samoa, and the CNMI created opportunities for abuse by U.S. taxpayers.  S. Rept. 99-313, supra at 478, 1986-3 C.B. (Vol. 3) at 478.  As a result, for each of the specified possessions, Congress delayed (1) implementation of the 1986 amendments to section 931, and (2) the grant of control over the local tax system until that possession and the Secretary executed a tax implementation agreement providing for elimination of double taxation, prevention of tax abuse, and sharing of tax information.  1986 TRA sec. 1271(b), 100 Stat. 2592.[7]

_____

[7]  Sec. 1271(b) of the Tax Reform Act of 1986 (1986 TRA), Pub. L. 99-514, provides:

     (b) Agreements To Alleviate Certain Problems
Relating to Tax Administration.--Subsection (a) shall
apply to Guam, American Samoa, or the Northern Mariana
Islands only if (and so long as) an implementing
agreement is in effect between the United States and
                                        (continued...)

The Tax Implementation Agreement Between the United States and American Samoa was executed for the United States by the Assistant Secretary for Tax Policy, effective January 1, 1988. See Tax Implementation Agreement Between the United States of America and American Samoa, 1988-1 C.B. 408.  Adoption of that agreement satisfied the sole precondition to availability of the revised section 931(a) exclusion for residents of American Samoa. See 1986 TRA sec. 1277(b), 100 Stat. 2600.

---

[7](...continued)
such possession with respect to--

(1) the elimination of double taxation involving taxation by such possession and taxation by the United States,

(2) the establishment of rules under which the evasion or avoidance of United States income tax shall not be permitted or facilitated by such possession,

(3) the exchange of information between such possession and the United States for purposes of tax administration, and

(4) the resolution of other problems arising in connection with the administration of the tax laws of such possession or the United States.

Any such implementing agreement shall be executed on behalf of the United States by the Secretary of the Treasury after consultation with the Secretary of the Interior.

B.   Whether Section 931(a) Applies in the Absence of Regulations Under Section 931(d)(2)

1.   Regulation Authority Under Section 931(d)(2)

Section 931(d)(2) provides:

(2) Determination of source, etc.--The determination as to whether income is described in paragraph (1) or (2) of subsection (a) shall be made under regulations prescribed by the Secretary.

The first issue for decision is whether section 931(a) applies even though respondent has not issued regulations under section 931(d)(2).  The dissent argues, contrary to the view of both parties, that section 931(d)(2) delegates to the Secretary the authority to decide (simply by issuing or not issuing regulations) whether the section 931(a) exclusion applies to residents of Guam, American Samoa, and the CNMI.  Dissenting op. pp. 33-34.  Because the Secretary has issued no regulations, according to the dissenting opinion, the section 931(a) exclusion has not applied to anyone since 1986, and it will never apply to anyone if the Secretary does not issue regulations under section 931(d)(2).

We believe the view expressed in the dissenting opinion conflicts with the language of the 1986 amendments to section 931, closely related non-Code provisions enacted in 1986, and clear expressions of congressional intent contained in the legislative history accompanying enactment of those provisions. First, section 931(a) itself provides the exclusion, independent

of the regulatory authority in section 931(d)(2).  The 1986

Senate Finance Committee report provides as follows:

> An individual who is a bona fide resident of Guam, American Samoa, or the CNMI during the entire taxable year is subject to U.S. taxation in the same manner as a U.S. resident.  However, in the case of such an individual, gross income for U.S. tax purposes does not include income derived from sources within any of the three possessions, or income effectively connected with the conduct of a trade or business by that individual within any of the three possessions. * * *

S. Rept. 99-313, supra at 480, 1986-3 C.B. (Vol. 3) at 480.  This

language shows the legislative assumption that the exclusion

would take effect independently of the issuance of Treasury

regulations.  The dissent's view that the exclusion has no effect

absent regulations creates an unnecessary conflict between

section 931(a) and (d)(2).  See FDA v. Brown & Williamson Tobacco

Corp., 529 U.S. 120, 133 (2000) (courts must interpret a statute

to "fit, if possible, all parts into an harmonious whole",

quoting FTC v. Mandel Bros., Inc., 359 U.S. 385, 389 (1959)).

Second, the legislative history states (and illustrates with

examples) that the purpose of the regulatory authority is to

prevent abuse under the mirror system of taxation.  See S. Rept.

99-313, supra at 481, 1986-3 C.B. (Vol. 3) 481.  The Senate

Report states:

The bill delegates to the Secretary of the Treasury the authority to prescribe regulations to determine whether income is sourced in, or effectively connected with the conduct of a trade or business in, one of these possessions, and to determine whether an individual is a resident of one of these possessions. The committee anticipates that the Secretary will use this authority to prevent abuse. * * *

Id. Thus, Congress stated a reasonable purpose for enacting section 931(d)(2): to prevent abuse. This reading of section 931(d)(2) avoids any conflict between it and section 931(a).

Third, in closely related provisions in the 1986 TRA (i.e., sections 1271, 1272, and 1277(b),[8] applicable to Guam, American Samoa, and the CNMI), Congress used explicit language to impose a precondition to implementation of the section 931(a) exclusion. That is, Congress explicitly provided that the amendments to section 931(a) and the grant to the possessions of authority over their local tax systems would take effect only upon adoption of tax implementation agreements between the U.S. and Guam, American Samoa, and the CNMI. 1986 TRA secs. 1271(b), 1277(b). In contrast, Congress did not use similar language conditioning

---

[8] 1986 TRA sec. 1277(b), 100 Stat. 2600, provides as follows:

(b) Special rule for Guam, American Samoa, and the Northern Mariana Islands.--The amendments made by this subtitle shall apply with respect to Guam, American Samoa, or the Northern Mariana Islands (and to residents thereof and corporations created or organized therein) only if (and so long as) an implementing agreement under section 1271 is in effect between the United States and such possession.

implementation of the exclusion on the issuance of regulations. We can reasonably assume Congress intentionally chose different words in closely related statutory provisions to produce a different meaning.

Fourth, contrary to the view stated in the dissent, section 931(d)(2) lacks one "plain meaning". Section 931(d)(2) states merely that the determination of whether income is from sources within, or effectively connected with a trade or business within, a possession "shall be made under regulations prescribed by the Secretary." The statute is silent as to whether those regulations may be issued under section 931 or another section of the Code, such as sections governing the determination of sources of income (sections 861-865). In the absence of regulations under section 931(d)(2), we believe it is appropriate to consider sections 861-865 and related regulations in deciding what is American Samoan source and effectively connected income.

2.    The Cases

We have frequently held that the Secretary may not prevent implementation of a tax benefit provision simply by failing to issue regulations. Estate of Maddox v. Commissioner, 93 T.C. 228, 233-234 (1989); First Chi. Corp. v. Commissioner, 88 T.C. 663, 676-677 (1987), affd. 842 F.2d 180 (7th Cir. 1988); Occidental Petroleum Corp. v. Commissioner, 82 T.C. 819, 829 (1984). The dissent relies on Alexander v. Commissioner, 95 T.C.

467, 473 (1990), affd. without published opinion sub nom. <u>Stell v. Commissioner</u>, 999 F.2d 544 (9th Cir. 1993). In <u>Alexander</u>, we considered the effect of the Secretary's failure to issue regulations under section 465(c)(3)(D). Section 465(c)(3)(D) provides that a limitation imposed on taxpayers by the at-risk rules "shall apply only to the extent provided in regulations prescribed by the Secretary." In <u>Alexander</u>, we held that, absent regulations, the limitation does not apply. That holding is fully reconcilable with the principle that the Secretary's failure to issue regulations does not bar application of a beneficial tax statute. Nothing in the cases cited in the dissenting opinion suggests that section 931(a) does not apply until regulations are issued under section 931(d)(2).

### 3. Conclusion

We conclude that the exclusion under section 931(a) applies even though the Secretary has not issued regulations under section 931(d)(2).

### C. Whether Petitioner's Income Was American Samoan Source Income or Was Effectively Connected With a Trade or Business in American Samoa

#### 1. Positions of the Parties

The parties dispute whether income earned by petitioner for performing services while the M/V <u>Sea Encounter</u> was in international waters is excludable from gross income. Respondent contends primarily that, under section 863(d)(2), the income petitioner earned for performing services in international waters

is U.S. source income.  Petitioner relies primarily on section 931(a) and on section 1.863-6, Income Tax Regs., for the proposition that the compensation he earned for services performed in international waters is sourced in American Samoa or is effectively connected with a trade or business in American Samoa.

2.    Ocean-Based Personal Services Income

We first consider respondent's contention that petitioner's income earned in international waters is U.S. source income under section 863(d).

Generally, personal services income of U.S. persons[9] is sourced where the services are performed, without regard to the location of the payor, the residence of the taxpayer, the place of contracting, or the place of payment.  Secs. 861(a)(3), 862(a)(3); Dillin v. Commissioner, 56 T.C. 228, 244 (1971); sec. 1.861-4(a), Income Tax Regs.

Before 1987, income earned by U.S. citizens and residents from personal services performed in international waters was generally sourced where the services were performed; thus, income from those activities was generally treated as foreign source income.  Sec. 862(a)(3); H. Rept. 99-426, at 381 (1985), 1986-3 C.B. (Vol. 2) 381; S. Rept. 99-313, at 357 (1986), 1986-3 C.B. (Vol. 3) 357; H. Conf. Rept. 99-841, at II-599 (1986), 1986-3 C.B. (Vol. 4) 599.  This resulted in a larger foreign tax credit

---

[9]  A U.S. person is a citizen or resident of the United States.  Sec. 7701(a)(30)(A).

limitation, even though foreign countries generally did not tax that income.  H. Rept. 99-426, supra at 382, 1986-3 C.B. (Vol. 2) at 382; S. Rept. 99-313, supra at 358, 1986-3 C.B. (Vol. 3) at 358.

Section 863(d) was enacted in 1986.  Section 863(d)(1) provides generally that income earned by a U.S. person from personal services performed in an ocean-based activity is U.S. source income, and income derived by a non-U.S. person for such services is not U.S. source income.  Sec. 863(d)(1); 1986 TRA sec. 1213(a), 100 Stat. 2540.

Petitioner contends that Congress intended for section 863(d) to apply based on the residence, and not the citizenship, of the taxpayer.  If petitioner's contention were correct, section 863(d) would not apply to petitioner (i.e., it would not treat his income earned from personal services performed in international waters as U.S. source) because he is not a U.S. resident.  Petitioner bases this contention on the following language in the House Ways and Means Committee report accompanying enactment of the 1986 TRA:

> all income from space or ocean activities is sourced in the country of residence of the person generating the income: income derived by a U.S. resident is U.S. source income and income derived by a nonresident is sourced outside the United States. * * *

H. Rept. 99-426, supra at 382, 1986-3 C.B. (Vol. 2) at 382.

We disagree with petitioner; the statutory language, differences between the House and Senate versions of the 1986 TRA, and differences in the House and Senate committee reports for the 1986 TRA compel a different reading.  The House bill (section 615(a) of H.R. 3838) provided that ocean activity income is sourced in the country of residence of the person generating the income.  H. Rept. 99-426, supra at 382, 1986-3 C.B. (Vol. 2) at 382.  In contrast, the Senate bill (section 915(a) of H.R. 3838) provided that ocean-activity income derived by U.S. persons[10] is sourced in the United States and income derived by persons other than U.S. persons is sourced outside the United States.  S. Rept. 99-313, supra at 358, 1986-3 C.B. (Vol. 3) at 358.  The Senate Finance Committee report for the 1986 TRA included a modified version of the House description which reflects the change in bill language.  The Senate report said in pertinent part:

> all income derived from space or ocean activities is sourced in the country of residence of the person generating the income: income derived by United States persons (as defined in sec. 7701(a)(30)) is U.S. source income and income derived by persons other than U.S. persons is sourced outside the United States.

S. Rept. 99-313, supra at 358, 1986-3 C.B. (Vol. 3) at 358.

The conference report included the Senate version of the

---

[10]  See supra note 9.

bill on this point with modifications, none of which are relevant here.  H. Conf. Rept. 99-841, supra at II-600, 1986-3 C.B. (Vol. 4) at 600.  Thus, section 863(d) as enacted applies to all U.S. persons; i.e., to both U.S. citizens and residents.

Petitioner is a U.S. person because he is a U.S. citizen. Thus, subject to our review of authorities cited by petitioner, income earned by petitioner from performing services in international waters is U.S. source income.  Sec. 863(d)(2); sec. 1.863-8(d)(2)(ii)(A), Proposed Income Tax Regs., 66 Fed. Reg. 3911 (Jan. 17, 2001).

3.    Source of Income Received by Possessions Residents:
       Sec. 1.863-6, Income Tax Regs.

We next consider whether authorities cited by petitioner, primarily section 931(a) and section 1.863-6, Income Tax Regs., lead to a result different than respondent contends applies under section 863(d).

As stated above at paragraph A-1, section 931(a) provides an exclusion for income sourced or effectively connected with a trade or business in American Samoa.  However, section 931 does not define American Samoan source or effectively connected income, and so we consider the sourcing rules contained in sections 861-865 and related regulations in construing those terms.

Sections 1.861-1 through 1.863-5, Income Tax Regs., establish rules for determining whether income is from a U.S.

source.  Section 1.863-6, Income Tax Regs., states that the principles of sections 1.861-1 through 1.863-5, Income Tax Regs., are applied in determining whether gross income is from sources within or without a possession of the United States.  Section 1.863-6, Income Tax Regs., also provides that, in applying sections 1.861-1 through 1.863-5, Income Tax Regs., the name of the possession shall be substituted for the term "United States".[11]  Thus, the effect of section 1.863-6, Income Tax Regs., is to treat income from personal services which would be sourced in the United States under sections 1.861-1 through 1.863-5, Income Tax Regs., if the services were performed in the United States, as sourced in American Samoa if the services were performed in American Samoa.

---

[11]  Sec. 1.863-6, Income Tax Regs., provides:

Sec. 1.863-6.  Income From Sources Within a Foreign Country or Possession of the United States.

    The principles applied in §§1.861-1 to 1.863-5, inclusive, for determining the gross and the taxable income from sources within and without the United States shall generally be applied, for purposes of the income tax, in determining the gross and the taxable income from sources within and without a foreign country, or * * * possession of the United States. * * * In the application of this section the name of the particular foreign country or possession of the United States shall be substituted for the term "United States, * * *"

The last sentence quoted above was added to sec. 1.863-6, Income Tax Regs., in 1975.  T.D. 7378, 1975-2 C.B. 272, 283.

Petitioner contends that, in the absence of regulations under section 931(d)(2), we should conclude that under section 1.863-6, Income Tax Regs., petitioner's fishing income is American Samoa source and thus excludable under section 931(a). We disagree. Sections 1.861-1 to 1.863-5, Income Tax Regs., adopted before 1986, do not treat income earned from personal services performed in international waters as U.S. source income; instead, they provide that the source of income from personal services is the place where the services are performed. Sec. 1.861-4(b)(1), Income Tax Regs. Income earned from personal services performed in international waters was not treated as U.S. source income until section 863(d)(2) was enacted in 1986.[12] Thus, section 1.863-6, Income Tax Regs., does not support petitioner's position.

The Secretary has not proposed that section 1.863-6, Income Tax Regs., be changed to refer to section 1.863-8, Proposed Income Tax Regs. Thus, section 1.863-6, Income Tax Regs., does not incorporate section 1.863-8, Proposed Income Tax Regs. As a result, income earned from services performed in international waters, which is sourced in the United States by section 863(d) and section 1.863-8, Proposed Income Tax Regs., is not treated as American Samoan source if earned by a resident of American Samoa.

---

[12] Sec. 863(d) is effective for tax years beginning after Dec. 31, 1986. 1986 TRA sec. 1213(b); see also sec. 1.863-8(b), Proposed Income Tax Regs.

The Secretary could have proposed that change when section 1.863-8, Proposed Income Tax Regs., was proposed.  We consider the absence of proposed changes to section 1.863-6, Income Tax Regs., to be an indication that the Secretary intended section 1.863-6, Income Tax Regs., not incorporate the rules of section 863(d) relating to income earned from personal services performed in international waters.

4. <u>Whether Section 863(d) Violates the Anti-Discrimination Provisions of the 1986 TRA or Results in Discriminatory Treatment</u>

Petitioner points out that section 931 was amended in 1986 because (inter alia):

> [t]he possessions need tax systems that help them to pursue development policies and to exercise greater control over their own economic welfare.

H. Rept. 99-426, <u>supra</u> at 485, 1986-3 C.B. (Vol. 2) at 485; S. Rept. 99-313, <u>supra</u> at 478, 1986-3 C.B. (Vol. 3) at 478. Petitioner contends that it would be inconsistent for Congress to give the possessions control over their economic welfare while taking away their ability to tax their residents' income earned from personal services in international waters.  We disagree that Congress intended to end all U.S. taxation of the income of residents of the possessions.  Congress made this clear in the Senate report, which states:

> An individual who is a bona fide resident of Guam, American Samoa, or the CNMI during the entire taxable year is subject to U.S. taxation in the same manner as a U.S. resident. * * *  Thus, even a bona fide resident

of Guam, the CNMI, or American Samoa is required to file a U.S. return and to pay taxes on a net basis if he receives income from sources outside the three possessions (i.e., U.S. or foreign source income).
* * *

S. Rept. 99-313, supra at 480-481, 1986-3 C.B. (Vol. 3) at 480-481.

Section 1271(d) of the 1986 TRA provides that Guam, American Samoa, and the CNMI may not enact any tax law that discriminates against any U.S. person or any resident of any other possession. Petitioner contends that treating income from personal services earned by residents of the possessions as U.S. source income under section 863(d) violates section 1271(d) of the 1986 TRA because there are different classes of taxpayers within the possessions and there may be unintentional discrimination. We disagree because the provision petitioner cites applies to those specified possessions, and not to the United States.

Petitioner also asserts that a U.S. citizen who resides in American Samoa can avoid sourcing income from the performance of services in international waters in the United States by operating as a personal services corporation formed in American Samoa because Congress exempted bona fide residents of the specified possessions from the treatment of subpart F for controlled foreign corporations. Sec. 957(c)(2).

Congress anticipated that problem in the 1986 TRA. S. Rept. 99-313, supra at 358. Congress stated that this problem was

substantially lessened because space and ocean income is included in the separate foreign tax credit limitation for shipping income, secs. 904(d)(2)(D) and 954(f), flush language, and is subject to U.S. tax under the subpart F rules, 1986 TRA sec. 1221(c)(2) (which amended the definition of foreign base company shipping income under section 954(f) to include income from a space or ocean activity (as defined in section 863(d)(2)). Conf. Rept. 99-841, supra, at II-600; General Explanation of the Tax Reform Act of 1986, at 934 (J. Comm. Print 1987) (the 1986 Bluebook).

5.  Whether Petitioner's Income Was Fully or Partially
    Sourced in American Samoa

Petitioner performed services for the M/V Sea Encounter in an American Samoan port or territorial waters 7 days in 1995, 10 days in 1996, and 11 days in 1997, and in international waters 208 days in 1995, 193 days in 1996, and 272 days in 1997. Respondent concedes that wages earned by petitioner while the M/V Sea Encounter was in port in American Samoa or within its territorial waters are American Samoan source income, secs. 861(a)(3), 862(a)(3), and that petitioner may exclude those amounts from income under section 931(a)(1).

Petitioner contends that the services he performed in American Samoa were so substantial that, under the facts and

circumstances test of section 1.861-4(b)(1), Income Tax Regs.[13] (providing generally that income from labor or services is sourced where the services are performed), all his income should be sourced in American Samoa. He contends that the source of his income should not be determined solely by counting the number of days he performed services in American Samoa. He points out that he received his wages in American Samoa and that his employer's contract was with an American Samoan cannery. Petitioner contends that, because of those activities, his fishing-related income was sourced exclusively in American Samoa.

---

[13] Sec. 1.861-4(b)(1)(i), Income Tax Regs., provides as follows:

> If a specific amount is paid for labor or personal services performed in the United States, that amount * * * shall be included in the gross income. If no accurate allocation or segregation of compensation for labor or personal services performed in the United States can be made, or when such labor or service is performed partly within and partly without the United States, the amount to be included in the gross income shall be determined on the basis that most correctly reflects the proper source of income under the facts and circumstances of the particular case. In many cases the facts and circumstances will be such that an apportionment on the time basis will be acceptable, that is, the amount to be included in gross income will be that amount which bears the same relation to the total compensation as the number of days of performance of the labor or services within the United States bears to the total number of days of performance of labor or services for which the payment is made. In other cases, the facts and circumstances will be such that another method of apportionment will be acceptable.

Section 1.861-4(b)(1), Income Tax Regs., provides that, where appropriate, income from services performed within and without the United States may be allocated on the basis of time. Under that approach, the amount included in gross income is the amount that bears the same relation to total wages as the number of days the taxpayer performed services in the United States bears to the total number of days for which the taxpayer performed services for which wages were paid.

We disagree that all of petitioner's fishing-related income was sourced in American Samoa. The location of the payor, the place of contracting, and the place of payment do not control for purposes of sourcing service income. Sec. 861(a)(3); Dillin v. Commissioner, 56 T.C. 228, 244 (1971); sec. 1.861-4(a), Income Tax Regs. Petitioner was chief engineer of the M/V Sea Encounter while it was fishing in international waters, which was the vast majority of the days petitioner performed the services at issue here. We believe that the fact that petitioner was paid based on fish tonnage shows that petitioner's services performed in American Samoa were not disproportionately important. Thus, we find no reason to depart from the proportionality rules of section 1.861-4(b), Income Tax Regs.

We conclude that the portion of petitioner's income that is eligible for the section 931(a) exclusion is based on the number of days he worked in American Samoa.

6.  Whether Petitioner's Income Was Effectively Connected With a Trade or Business in American Samoa

We next consider whether, as petitioner contends, his income is excludable from U.S. income on the grounds that it was effectively connected with a trade or business in American Samoa.

As stated earlier, section 931(a)(2) provides that the income of an individual who resides in, for example, American Samoa, is excludable from U.S. income if it is "effectively connected with the conduct of a trade or business" in American Samoa.  Petitioner contends that all his fishing-related income is effectively connected with the conduct of a trade or business in American Samoa because he performed substantial services in American Samoa (e.g., preparing the vessel before trips and unloading the catch afterwards) and that those services were a material factor in the production of his income.

Under section 864(c), income can be "effectively connected with the conduct of a trade or business within the United States" if it is from "sources within", or "sources without", the United States.  Sec. 864(c)(1)(A), (c)(4).  In the absence of regulations under section 931(a)(2) defining the phrase "effectively connected with the conduct of a trade or business", both parties refer to provisions governing whether income is effectively connected with a U.S. trade or business under section 864(c), and contend that application of those principles favors their respective position.  We believe respondent has the better

argument, and we conclude that application of effectively connected income concepts leads to the same result as occurs by applying the sourcing rules discussed above in paragraph C-5.

### a.     Sources Within

Section 864(c)(1)(A) determines whether income from sources within the United States is effectively connected with a U.S. trade or business.  Under the effectively connected rules applicable to income from sources within the United States, income is effectively connected to the extent it has a U.S. source.  See sec. 864(c)(3).  Thus, the effect of applying the principles of section 864(c)(3) to section 931 would be that a taxpayer's income would qualify for the section 931 exclusion to the extent the income is from an American Samoan source.  That analysis leads to the same result that we reached above at paragraph C-5.

### b.     Sources Without

Section 864(c)(4) determines whether income from sources without the United States is effectively connected with a U.S. trade or business.  The effect of applying the section 864(c)(4) principles to construe section 931(a)(2) here is the same as applying the sourcing rules (see par. C-5, above) for two reasons.  First, income from sources without the United States is effectively connected with a U.S. trade or business of an individual only if the income is earned through an office or

other fixed place of business of that individual.  Sec. 864(c)(4)(B); sec. 1.864-7(b)(1), Income Tax Regs.  There is no evidence petitioner meets this requirement.  Second, for income received by an individual from sources without the United States to be effectively connected with a U.S. trade or business, it must be income from one of the following categories: Rents, royalties, dividends, interest, or the sale or exchange of personal property.  Sec. 864(c)(4)(B).  Although the term "trade or business" can refer to income from the performance of personal services, sec. 863(b), that category of income is not listed in section 864(c)(4)(B).

Thus, application of principles governing whether income is effectively connected with a trade or business does not result in sourcing more of petitioner's income in American Samoa that the amount discussed above in paragraph C-5.

7.    Conclusion

We conclude that income earned by petitioner in 1995, 1996, and 1997 from the performance of personal services in international waters is not excluded from U.S. tax by section 931(a).

D.    Petitioner's State Tax Payments and Refunds

Gross income does not include income attributable to the recovery during the taxable year of any amount deducted in any prior taxable year to the extent such amount did not reduce the

amount of tax imposed.  Sec. 111; <u>Kadunc v. Commissioner</u>, T.C. Memo. 1997-92.

Petitioner claimed an $8,708 income tax deduction relating to payment of State taxes in 1994, and he received a $1,150 State tax refund in 1995.  Petitioner contends that he received no tax benefit in 1995 relating to the refund because his 1995 adjusted gross income was negative.  We disagree; 1994 (i.e., the year of the deduction) is the relevant year for determining whether he received a tax benefit.  <u>Kadunc v. Commissioner</u>, <u>supra</u>. Petitioner does not contend that he did not receive a tax benefit in 1994.  Accordingly, the amount of the 1995 refund is includable in his 1995 gross income.

Similarly, in 1995, petitioner claimed a $4,000 income tax deduction relating to payment of State taxes, but paid no U.S. income tax because, relying on section 931, he excluded all of his wage income.  In 1996, he received a $3,839 refund. Petitioner contends he received no tax benefit because he had no taxable income in 1995.  We disagree.  As a result of our holding that he may not exclude his wage income, petitioner enjoyed a tax benefit by his deduction of State income taxes for 1995.  Thus, petitioner must include in his 1996 gross income the amount of

the refund to the extent respondent allows him a deduction relating to the payment of State taxes in 1995.

Accordingly,

<u>Decision will be entered</u>

<u>under Rule 155</u>.

Reviewed by the Court.

WELLS, COHEN, SWIFT, GERBER, RUWE, WHALEN, HALPERN, BEGHE, CHIECHI, LARO, GALE, THORNTON, and MARVEL, <u>JJ.</u>, agree with this majority opinion.

VASQUEZ, <u>J.</u>, concurs.

BEGHE, J., concurring:  Having joined the majority opinion, I write separately to make two additional points in support of the results we reach in this case.

First, adoption of the dissenting view would be contrary to published guidance and administrative practice of the Internal Revenue Service; the Service has operated on the assumption that section 931 was in force during the years in issue, and that it continues in force, notwithstanding the failure to issue regulations.  Since the Tax Implementation Agreement with American Samoa was entered into in 1988, the Service has issued Publication 570, Tax Guide For Individuals With Income From U.S. Possessions, which provides instructions and examples on reporting income from sources in American Samoa and other possessions, and for preparing Form 4563, Exclusion of Income for Bona Fide Residents of American Samoa.

Although 14 years seems like plenty of time to come up with regulatory guidance, U.S. citizens residing and working in American Samoa have not been completely in the dark.  I therefore see no objection to sustaining the Service's stopgap effort to implement the statutory scheme.

Second, petitioner argues on brief that the United States should not interfere with American Samoa's "primary tax jurisdiction" over his income-earning activities in international waters.  Petitioner's argument is belied by his otherwise

unexplained claim--on his American Samoan tax returns for 1995, 1996, and 1997--that his earned income for those years was completely exempt from American Samoan taxation "per fisherman's agreement".[1]  Acceptance of this well-compensated U.S. citizen's argument that he also has no U.S. income tax liability for the years in issue would result in his escaping virtually all income taxes for those years.  Cf. <u>Estate of Durkin v. Commissioner</u>, 99 T.C. 561 (1992).  Petitioner's professed solicitude for American Samoa's ability to collect its income tax from American Samoa-based workers earning income from personal services in international waters, majority op. p. 21, therefore strikes me as disingenuous and unworthy of credence.  There will be time enough in some later case to consider the merits of the ultimate resolution of this issue after the Treasury finally gets around to issuing new section 931 regulations.

---

[1]Materials in the record cited by respondent's second supplemental brief would seem to indicate petitioner tried to attach himself as a free rider to a tax exemption certificate issued by the American Samoan government to Van Camp, or took the position that none of his income was earned in American Samoa pursuant to the fish purchase and sale agreement between Van Camp and petitioner's employer.

FOLEY, J., dissenting:  I disagree with the majority's analysis and holding.

A.   The Statute's Plain Language Dictates

Congress, through its grant of legislative regulatory authority, mandated that "the determination as to whether income is [sourced, or effectively connected to a taxpayer's trade or business, in American Samoa] shall be made under regulations prescribed by the Secretary."  Sec. 931(d)(2).  Pursuant to the plain and unambiguous language of section 931(d)(2), there can be no such determination until regulations are issued.  Where the statute's language is plain, the language is where the interpretive task should end, and the sole function of the courts is to enforce such language according to its terms.  United States v. Ron Pair Enters., Inc., 489 U.S. 235, 241 (1989); United States v. Merriam, 263 U.S. 179, 187-188 (1923)(stating that tax statutes are not to be extended by implication beyond the clear import of the language used).

Section 931 cannot be reasonably interpreted because definition of the statute's most integral terms is relegated to regulations that do not exist.  Congress explicitly vested the Secretary with the authority to prescribe legislative regulations delineating the scope of the income exclusion pursuant to section 931(d)(2).  See Coca-Cola Co. v. Commissioner, 106 T.C. 1, 19 (1996); Chevron, U.S.A., Inc. v. Natural Res. Def. Council, Inc.,

467 U.S. 837, 843-844 (1984) (holding that where Congress has explicitly left a gap for the agency to fill, there is an express delegation of authority to the agency to elucidate a specific provision of the statute by regulation, and such regulations are legislative).  Indeed, the determination whether income is "derived from sources within [American Samoa]" or "effectively connected with the conduct of a trade or business * * * within [American Samoa]" is the crux of the statute.  Sec. 931(a).  Such determination can be accomplished in a variety of ways, and this Court cannot divine what rules the Secretary would promulgate.  Moreover, our role is to interpret, not make, the law.

The statute states that the determination of whether income is effectively connected "shall be made under regulations prescribed by the Secretary."  Sec. 931(d)(2).  The majority imply that such language is ambiguous, and that the Court, and presumably taxpayers, may look to any regulation if the Code does not specify the section under which the regulations must be drafted.  Majority op. p. 13.  The above-referenced language is commonly used in statutes.  Respondent and tax practitioners will certainly find creative uses for this sophistic line of analysis.

The majority's analysis eventually shifts to section 864.  Application of that statute does not work, however, because section 864 was intended to determine whether income of a nonresident alien is effectively connected to the United States.  Sec. 864(c)(1).  In

fact, a literal application of section 864 to section 931 would result in no U.S. citizen's qualifying under the effectively connected prong. Nevertheless, the "principles" of an inapplicable section (i.e., section 864) are being relied on, and the mandate of the applicable section (i.e., section 931(d)(2)) is ignored in a desperate attempt to make the statute work. See majority op. p. 26. The bottom line is that, other than section 931, there are no statutes or regulations addressing whether an individual's income is "effectively connected with the conduct of a trade or business by such individual within * * * [American Samoa]". Sec. 931(a)(2).

Rather than adhere to the statute, the majority relies on effectively connected "concepts" and "principles". See majority op. pp. 27-28. The statute, legislative history, and Implementing Agreement do not authorize the application of section 864's "principles". In numerous other grants of regulatory authority Congress explicitly provided that the "principles" of a particular section should be applicable, but with respect to section 931 Congress failed to provide such direction. See sections 41(f)(1)(B), 52(b), 120(d)(6)(B), 127(c)(4)(B), 129(e)(5)(B), 267(a)(3), 367(e)(1), 383(b), 404(g)(3)(C), 414(c), 416(i)(1)(B)(iii)(II), 597(b), 1092(b)(1), 2663(2), et al. In order to give effect to section 931(d)(2), the Court must follow, not ignore, its mandate.

B.    Exceptions to the Plain Language Doctrine Are Not
      Applicable

There are two exceptions to the plain language doctrine.  We
need not adhere to a literal application of a statute if such
language produces an outcome that is 'demonstrably at odds' with
clearly expressed congressional intent to the contrary, United
States v. Ron Pair Enters., Inc., 489 U.S. at 241 (1989) (quoting
Griffin v. Oceanic Contractors, Inc., 458 U.S. 564, 571 (1982));
Peaden v. Commissioner, 113 T.C. 116, 122 (1999), or results in
an outcome so absurd "as to shock the general moral or common
sense", Crooks v. Harrelson, 282 U.S. 55, 60 (1930); Tele-
Communications, Inc. v. Commissioner, 95 T.C. 495 (1990).  A
conclusion that section 931 is inapplicable without regulations
neither conflicts with clearly expressed congressional intent nor
results in an absurd outcome.  To the contrary, the legislative
history and the implementing agreement both support the plain
language of the statute which provides that section 931 is
inapplicable in the absence of regulations.

      1.    Legislative History

The legislative history indicates that Congress gave only
the Secretary the authority to prescribe the applicable rules.
Congress was equally concerned about American Samoa's authority
to implement its own tax system and the minimization of potential
abuse.  The Senate Committee on Finance stated:

Therefore, to promote fiscal autonomy of the possessions, it is important to permit each possession to develop a tax system that is suited to its own revenue needs and administrative resources.  It is also important to coordinate the possessions' tax systems with the U.S. tax system to provide certainty and minimize the potential for abuse. [S. Rept. 99-313, at 478 (1986), 1986-3 C.B. (Vol. 3) 1, 478.]

To accomplish these goals, Congress gave extraordinary power to the Secretary to negotiate an implementing agreement between the United States and American Samoa, and to prescribe regulations for purposes of defining the boundaries of American Samoa's tax authority.  Id. at 479-481.

Congress intended that the Secretary define "effectively connected income" in a manner that would prevent tax avoidance. Id. at 481; H. Conf. Rept. 99-841 (Vol. II), at II-680 (1986), 1986-3 C.B. (Vol. 4) 1, 680.  The legislative history identifies situations where taxpayers with assets having built-in gain move to a U.S. possession, sell their assets, and avoid tax on the gain.  S. Rept. 99-313, supra, 1986-3 C.B. (Vol. 3) at 481. These tax avoidance techniques are an illustrative, rather than exhaustive, delineation of machinations Congress wanted the Secretary to foreclose.  The Secretary was given this responsibility because he, rather than Congress or this Court, has experience with the specific problem and the expertise to solve it.

2.    <u>Implementing Agreement</u>

Congress gave the Secretary the responsibility to negotiate the implementing agreement, without which section 931 is inoperative.  Tax Reform Act of 1986 (TRA 1986), Pub. L. 99-514, sec. 1271, 100 Stat. 2085, 2591; S. Rept. 99-313, <u>supra</u> at 479. Moreover, the implementing agreement indicates that the Secretary has the responsibility of defining the scope of American Samoa's tax authority and explicitly states that "the United States may use its regulatory authority over sourcing rules under <u>section 931(d)(2)</u> and 7654(e) of the Code to determine that certain income is U.S.-source income."  Tax Implementation Agreement Between the United States of American and American Samoa, 1988-1 C.B. 408, 410. (Emphasis added.)

Pursuant to section 1271 of TRA 1986, and the resulting implementing agreement, the Secretary is granted extraordinary authority.  For example, American Samoa is allowed to replace the "mirror" system of taxation with its own tax scheme, but the Secretary has the authority to return the possession to the "mirror" system if the possession enacts discriminatory tax laws or the possession's tax receipts fall (revenue requirement).  TRA 1986 sec. 1271, 100 Stat. 2592.  Thus, after discovering a violation of these requirements and informing Congress of its findings, the possession will return to the "mirror" system unless Congress passes a law providing otherwise.  <u>Id.</u>

The aforementioned revenue requirement is a good example of the coordination between the implementing agreement and the regulations. Obviously, whether tax receipts rise or fall within American Samoa is directly related to the Secretary's definition of "income derived from sources within [American Samoa]" and "income effectively connected with the conduct of a trade or business by such individual within [American Samoa]." The definition of these terms can be adjusted to ensure that certain income does not escape from both the U.S.- and American Samoan- tax systems. Thus, the implementing agreement and the regulation were intended to, and in fact do, work in tandem to outline the scope of American Samoa's tax authority.

C.    Section 931(d)(2) Presents a Case of First Impression

On numerous occasions, this Court has considered whether the promulgation of regulations pursuant to a statutory grant of authority was a condition precedent to the execution of a statute. See Schwalbach v. Commissioner, 111 T.C. 215 (1998); Intl. Multifoods Corp. v. Commissioner, 108 T.C. 579 (1997); Estate of Neumann v. Commissioner, 106 T.C. 216 (1996); H Enters. Intl., Inc. v. Commissioner, 105 T.C. 71 (1995); Estate of Hoover v. Commissioner, 102 T.C. 777 (1994); Alexander v. Commissioner, 95 T.C. 467 (1990); Estate of Maddox v. Commissioner, 93 T.C. 228 (1989); First Chicago Corp. v. Commissioner, 88 T.C. 663 (1987); Occidental Petroleum Corp. v. Commissioner, 82 T.C. 819 (1984).

In those cases, however, the grant of regulatory authority was not similar to section 931(d)(2)'s mandate, and the statute's ambit was not as dependent on the promulgation of regulations. In addition, the Court was not asked to interpret the statute's most integral term without sufficient guidance regarding Congress' intent.

In <u>Alexander v. Commissioner</u>, <u>supra</u> at 473, we held that a statute was not applicable because the Secretary had failed to promulgate regulations. We concluded:

> Section 465(c)(3)(D) unambiguously provides that section 465(b)(3) "shall apply only to the extent provided in regulations prescribed by the Secretary," to an activity described in section 465(c)(3)(A). Regulations have not been prescribed by the Secretary. Accordingly, we hold that section 465(b)(3) does not apply to the activities of the limited partnerships. <u>Id.</u>

We chose not to exercise our independent judgment because Congress gave the Secretary, and only the Secretary, the authority to prescribe the applicable rules.

In <u>Schwalbach</u>, <u>Intl. Multifoods</u>, <u>Estate of Neumann</u>,[1] and <u>H</u>

---

[1] In <u>Estate of Neumann v. Commissioner</u>, 106 T.C. 216, 219 (1996), the Court set forth the "whether versus how" test. The Court stated that:

> we are called upon to resolve the following question: Are the regulations a necessary condition to determining "whether" the GST tax applies * * * or do they constitute only a means of arriving at "how" that tax, otherwise imposed by the statute, should be determined * * *. <u>Id.</u>

(continued...)

Enters., the statutes at issue provided that "The Secretary shall prescribe such regulations as may be necessary or appropriate". See secs. 469(l), 865(j)(1), 2663, 7701(f). Thus, these cases are distinguishable from petitioner's because of the permissive nature of the grants of regulatory authority.

The majority rely on Estate of Maddox, First Chicago, and Occidental, for the proposition that the Secretary's failure to promulgate regulations as directed by Congress cannot prevent the application of a statute which confers a benefit on taxpayers. The majority's reliance on these cases is misplaced for two reasons. First, section 931 provides an exclusion for income sourced in, or effectively connected to, American Samoa, but such income is subject to taxation in American Samoa. See TRA 1986 sec. 1271(a), 100 Stat. 2593. Any tax reduction that may result from the interplay between the two tax systems was not intended by Congress. Thus, an exclusion from U.S. taxes pursuant to

---

[1](...continued)
Without regulations to determine the scope of the exclusion, we are unable to discern "whether" or "how" sec. 931 relates to petitioner. Thus, the "whether" versus "how" test is not useful. The regulatory grant of authority in sec. 931(d)(2), unlike the grant of authority in previous cases holding that the "how" prong of the test was applicable, explicitly provides that "whether income is described in paragraph (1) or (2) of subsection (a) shall be made under regulations prescribed by the Secretary."(Emphasis added.) In addition, the grant of authority at issue in Estate of Neumann v. Commissioner, supra at 218, directed the Secretary to draft regulations "consistent with the principles of chapters 11 and 12", thus giving the Court a foundation for its conclusion. See sec. 2663(2).

section 931 confers no benefit of the type contemplated in Estate of Maddox (i.e., reduction in estate tax due to application of section 2032A), and First Chicago and Occidental (i.e., relief from alternative minimum tax liability).  Accordingly, these cases are distinguished.

Second, the grants of authority in Estate of Maddox, First Chicago, and Occidental allowed the Secretary to promulgate legislative regulations that enlarged the scope of section 2032A and the tax benefit rule.  The Secretary was not required to define terms integral to the operation of the entire statute.  Thus, even in the absence of regulations, the Court in those cases could arrive at a reasonable conclusion regarding whether the taxpayer met the terms of the statute.  See Estate of Maddox v. Commissioner, supra at 233 (concluding that the language of section 2032A(g) "backhandedly tells us that Congress did not want the estate of a stockholder in a family corporation to be deprived of the benefits of section 2032A"); First Chicago Corp. v. Commissioner, supra at 672 (reasoning that section 58(h) "was obviously intended to give the tax benefit rule unlimited scope"); see also Occidental Petroleum Corp. v. Commissioner, supra at 827.  Congress, in section 931, did not, however, provide a basis upon which this Court can determine whether petitioner's income qualifies for exclusion.

D.    Conclusion

Congress enacted a statutory scheme delegating broad authority to the Secretary.  Whether we agree with such delegation, or are comfortable with its consequences, is irrelevant.  We must follow the statutory mandate and not do the job reserved for either the legislative or executive branch.