T.C. Summary Opinion 2005-78


UNITED STATES TAX COURT


HOSSAM HELMY EL-BIBANY AND SALMA HASSAN KANDIL, Petitioners v.
COMMISSIONER OF INTERNAL REVENUE, Respondent


Docket No. 9960-04S.                    Filed June 8, 2005.


Hossam Helmy El-Bibany and Salma Hassan Kandil, pro sese.

Anthony J. Kim and Aaron Stonecash, for respondent.


ARMEN, Special Trial Judge:  This case was heard pursuant to the provisions of section 7463 of the Internal Revenue Code in effect at the time that the petition was filed.[1]  The decision to be entered is not reviewable by any other court, and this opinion should not be cited as authority.

---

[1]  Unless otherwise indicated, all subsequent section references are to the Internal Revenue Code in effect for 2001, the taxable year in issue, and all Rule references are to the Tax Court Rules of Practice and Procedure.

Respondent determined a deficiency in petitioners' Federal income tax for the taxable year 2001 of $4,498. The deficiency is attributable solely to the 10-percent additional tax under section 72(t) on an early distribution from a qualified retirement plan.

After respondent's concession,[2] the issue for decision is whether petitioners are liable under section 72(t) for the 10-percent additional tax on an early distribution from petitioner Hossam Helmy El-Bibany's (Mr. El-Bibany) retirement plan. We hold that they are to the extent provided herein.

### Background

Some of the facts have been stipulated, and they are so found. We incorporate by reference the parties' stipulation of facts, supplemental stipulation of facts, and accompanying exhibits.

At the time that the petition was filed, petitioners resided in Menlo Park, California.

Mr. El-Bibany obtained a Ph.D. from Stanford University in 1992 and joined the faculty at Penn State University in 1993, until his job ended in 1999. At that time, petitioners had two small children, and petitioner Salma Hassan Kandil (Mrs. Kandil)

---

[2] Respondent concedes that petitioners are entitled to an exception from the early distribution penalty under sec. 72(t)(2)(E) of $846 for qualified higher education expenses for books and supplies.

wanted to obtain her teaching credentials, so they returned to California.[3]

In the fall of 2000, Mrs. Kandil became a full-time graduate student at San Jose State University (SJSU). As part of her studies, Mrs. Kandil became a student teacher at Jordan Middle School in August 2001, and she obtained her teaching credentials in elementary education in April 2002. Currently, Mrs. Kandil is a sixth-grade teacher of math and science at Jordan Middle School.

During the high-tech bubble in 2000, Mr. El-Bibany worked in "some nonemployment type of activities" related to high-tech investments. In the beginning of September 2001, Mr. El-Bibany left the United States on an employment contract as an international faculty member in the United Arab Emirates. Mr. El-Bibany, however, soon returned to the United States because of the general atmosphere resulting from the terrorist events of September 11, 2001. Aside from the 2 weeks he worked in the United Arab Emirates, Mr. El-Bibany remained unemployed during 2001. At a time not disclosed in the record, Mr. El-Bibany applied for unemployment compensation, but was not eligible because he had not worked in California for a specified period of time.

---

[3] Mrs. Kandil has a bachelor's degree in civil engineering.

In 2001, Mr. El-Bibany withdrew $48,720 from his retirement fund.[4]

Respondent does not dispute that petitioners incurred the following expenses in 2001:[5]

| | | |
|---|---|---|
| Room and board for petitioners' family collectively | | |
| | Apartment rent | $33,875 |
| | Utilities | 1,200 |
| | Food | 7,200 |
| Subtotal | | $42,275 |
| | | |
| Health insurance for petitioners' family collectively (including health insurance premiums and health care expenses) | | $1,800 |
| Transportation for Mrs. Kandil | | 1,981 |
| Books and supplies for Mrs. Kandil | | 846 |
| Total | | $46,902 |

Petitioners timely filed a Form 1040, U.S. Individual Income Tax Return, for 2001. On their return, petitioners disclosed the $48,720 distribution and reported $44,982 as the taxable amount. Petitioners did not report the 10-percent additional tax imposed by section 72(t) on line 55 "Tax on qualified plans, including IRAs, and other tax-favored accounts", but attached Form 5329, Additional Taxes on Qualified Plans (Including IRAs) and Other Tax-Favored Accounts, to their return. On Form 5329, petitioners

---

[4] There is no evidence in the record describing Mr. El-Bibany's retirement fund. In respondent's trial memorandum and on brief, respondent indicated that this fund was a "qualified retirement fund with TIAA-CREF". But see Rule 143(b) regarding ex parte statements in briefs and the like.

[5] Mrs. Kandil received a scholarship that covered her tuition expense.

indicated that the early distribution was not subject to tax under exception 7 (Individual retirement account (IRA) distributions made to unemployed individuals for health insurance premiums) and exception 8 (IRA distributions made for higher education expenses).

In the notice of deficiency, respondent determined that petitioners are liable for the 10-percent additional tax on an early distribution from a qualified retirement plan.

Petitioners timely filed a petition with the Court disputing the determined deficiency.

## Discussion[6]

Section 72(t)(1) imposes an additional tax on distributions from a qualified retirement plan equal to 10 percent of the portion of such amount that is includable in gross income unless the distribution comes within one of several statutory exceptions.[7]

As relevant herein, section 72(t)(2) exempts the following distributions from the additional tax if the distributions are made for: (1) Health insurance premiums for an unemployed individual, sec. 72(t)(2)(D); or (2) qualified higher education

---

[6] We decide the issue in this case without regard to the burden of proof because the issue is essentially one of law.

[7] Although the record does not describe Mr. El-Bibany's retirement plan, the parties have proceeded on the basis that the distribution was from an individual retirement plan within the scope of sec. 72(t).

expenses for the taxpayer or the taxpayer's spouse to the extent such distributions do not exceed the taxpayer's qualified higher education expenses for the taxable year, sec. 72(t)(2)(E), (7).

A. <u>Health Insurance Premiums</u>

A distribution qualifies under section 72(t)(2)(D) if it was made from an individual retirement plan to an individual after separation from employment:  (1) If such individual has received unemployment compensation for 12 consecutive weeks under any Federal or State unemployment compensation law by reason of such separation, sec. 72(t)(2)(D)(i)(I); (2) if such distribution was made during any taxable year during which such unemployment compensation is paid or the succeeding taxable year, sec. 72(t)(2)(D)(i)(II); and (3) to the extent such distribution does not exceed the amount paid during the taxable year for insurance, sec. 72(t)(2)(D)(i)(III).  A self-employed individual shall be treated as having satisfied the requirement of section 72(t)(2)(D)(i)(I) if, under Federal or State law, the individual would have received unemployment compensation but for the fact that the individual was self-employed.  Sec. 72(t)(2)(D)(iii).

Respondent does not dispute that petitioners incurred health insurance expenses of $1,800.  Respondent contends, however, that the exception under section 72(t)(2)(D) does not apply because Mr. El-Bibany does not satisfy the statutory requirements.  We agree.

The record is clear that Mr. El-Bibany did not receive any Federal or State unemployment compensation at any relevant time. See sec. 72(t)(2)(D)(i)(I). Mr. El-Bibany, however, testified that he worked in "some nonemployment activities" related to high-tech investments in 2000. Mr. El-Bibany's testimony raises the question whether he was self-employed. See sec. 72(t)(2)(D)(iii). Assuming arguendo that he was self-employed, there was no evidence to suggest that Mr. El-Bibany continued to work in such "nonemployment activities" in 2001. Indeed, Mr. El-Bibany was employed for only 2 weeks during 2001 in the United Arab Emirates. Moreover, Mr. El-Bibany presented no evidence that he would have been eligible to receive any Federal or State unemployment compensation. By his own testimony, Mr. El-Bibany applied for unemployment compensation, but he was not eligible because he had not worked for a specified period in California.

In view of the foregoing, we conclude that petitioner does not satisfy the requirements under section 72(t)(2)(D). Accordingly, we sustain respondent's determination on this issue.

B.  Qualified Higher Education Expenses

Qualified higher education expenses for purposes of section 72(t)(2)(E) are defined by section 529(e)(3).[8] Sec. 72(t)(7)(A). Section 529(e)(3)(A) defines qualified higher education expenses

---

[8] Sec. 529 sets forth criteria for higher education entities to be exempt from taxation as a qualified tuition program.

specifically as "tuition, fees, books, supplies, and equipment required for the enrollment or attendance" of the taxpayer or the taxpayer's spouse or child, among others, at an eligible educational institution.  In addition, an eligible student attending school at least half-time shall also include reasonable costs for an academic period (as determined under the qualified State tuition program) incurred by such student for room and board while attending such institution.  Sec. 529(e)(3)(B)(i). Section 529(e)(3)(B)(ii), however, limits the amount of room and board expenses that may be treated as qualified higher education expenses as follows:[9]

> The amount treated as qualified higher education
> expenses by reason of the preceding sentence [sec.
> 529(e)(3)(B)(i)] shall not exceed the minimum amount
> (applicable to the student) included for room and board
> for such period in the cost of attendance (as defined
> in section 472 of the Higher Education Act of 1965, 20
> U.S.C. 1087ll, as in effect on the date of the
> enactment of this paragraph) for the eligible
> educational institution for such period.

---

[9]  As described in the conference report, the Taxpayer Relief Act of 1997, Pub. L. 105-34, sec. 211(a), 111 Stat. 810,

> expands the definition of "qualified higher education
> expenses" under section 529(e)(3) to include room and
> board expenses (meaning the minimum room and board
> allowance applicable to the student as determined by
> the institution in calculating costs of attendance for
> Federal financial aid programs under sec. 472 of the
> Higher Education Act of 1965) for any period during
> which the student is at least a half-time student.

H. Conf. Rept. 105-220, at 361 (1997), 1997-4 C.B. (Vol. 2) 1457, 1831.

The statute thus mandates that room and board expenses are limited to the minimum amount as determined in the "cost of attendance", as defined in the Higher Education Act of 1965, Pub. L. 89-329, 79 Stat. 1219, as amended by the Higher Education Amendments of 1986, Pub. L. 99-498, sec. 406 (adding sec. 472 to the Higher Education Act of 1965), 100 Stat. 1454, codified at 20 U.S.C. sec. 108711(3) (Supp. IV 1998), as in effect on the date of the enactment of this paragraph.[10]

Section 529(e)(3) was added by the Taxpayer Relief Act of 1997, Pub. L. 105-34, sec. 211(a), 111 Stat. 810. This paragraph, however, was effective as if it were included in the amendments to the Small Business Job Protection Act of 1996, Pub. L. 104-188, sec. 1806, 110 Stat. 1895, which enacted section 529. Accordingly, our analysis must be guided by 20 U.S.C. sec. 1087ll(3) (1998), as in effect on August 20, 1996, the effective date of section 529(e)(3).

As of August 20, 1996, and as applicable to the issue in this case, the term "cost of attendance" was defined as:

---

[10] The Higher Education Act of 1965, Pub. L. 89-329, 79 Stat. 1219, 20 U.S.C. sec. 108711(3) (1994) was first enacted on Nov. 8, 1965, to strengthen college and university resources and to provide financial assistance to students in postsecondary and higher education. As relevant herein, the Higher Education Amendments of 1986, Pub. L. 99-498, sec. 406, 100 Stat. 1454, 20 U.S.C. sec. 108711(3) (Supp. IV 1998) added sec. 472 to the Higher Education Act of 1965. The purpose of this section was to define "cost of attendance" in determining a student's financial need for student financial aid assistance.

an allowance (as determined by the institution) for room and board costs incurred by the student which --

> (A) shall be an allowance of not less than $1,500 for a student without dependents residing at home with parents;

> (B) for students without dependents residing in institutionally owned or operated housing, shall be a standard allowance determined by the institution based on the amount normally assessed most of its residents for room and board; and

> (C) for all other students shall be an allowance based on the expenses reasonably incurred by such students for room and board, except that the amount may not be less than $2,500. [Emphasis added.]

20 U.S.C. sec. 1087ll(3) (Supp. IV 1998).[11]

Petitioners contend that their total room and board expenses of $42,275 qualify as higher education expenses. In contrast, respondent contends that the amount of room and board expenses that qualify as higher education expenses is limited under section 529(e)(3)(B)(ii). We agree with respondent.

There is no dispute that room and board expenses related to Mrs. Kandil's education qualify as higher education expenses. The amount that can qualify as higher education expenses, however, is specifically limited by statute. As stated earlier,

---

[11] We note that the Higher Education Amendments of 1998, Pub. L. 105-244, sec. 471(2)(B), 112 Stat. 1729, deleted the phrase "except that the amount may not be less than $2,500", effective for tax years beginning after Dec. 31, 2001. This amendment, however, does not apply in the instant case.

section 529(e)(3)(B)(ii) allows such expenses up to the minimum amount included for room and board in the cost of attendance as defined by 20 U.S.C. sec. 1087ll(3) (1998). Based on the applicable law, room and board expenses are limited to $2,500 (the minimum amount for off-campus students).

We recognize that college and graduate students may incur expenses beyond those projected by the educational institution.[12] Congress, however, has imposed limitations on the amount of room and board expenses that qualify for favorable tax treatment. However unfair this statute might seem to petitioners, the Court is bound to apply the law as written. See Estate of Cowser v. Commissioner, 736 F.2d 1168, 1171-1174 (7th Cir. 1984), affg. 80 T.C. 783 (1983). Accordingly, we conclude that petitioners are entitled to qualified higher education expenses for room and board of $2,500.

With regard to transportation expenses, respondent, at trial and in his trial memorandum, conceded that Mrs. Kandil's qualified higher education expenses included transportation costs up to the amount allowed as determined by SJSU. On brief, however, respondent argues that the concession was in error. In essence, respondent now contends that petitioners are not entitled to an allowance for transportation expenses because such

---

[12] For example, SJSU's cost of attendance for a student living off-campus for the academic year 2001-2 was $7,613.

expenses do not qualify as higher education expenses under section 529(e)(3)(A).

Respondent's change in position raises the issue of equitable estoppel against respondent. "Equitable estoppel is a judicial doctrine that 'precludes a party from denying his own acts or representations which induced another to act to his detriment.'" Hofstetter v. Commissioner, 98 T.C. 695, 700 (1992) (quoting Graff v. Commissioner, 74 T.C. 743, 761 (1980), affd. 673 F.2d 784 (5th Cir. 1982)). It is well settled, however, that equitable estoppel does not bar or prevent respondent from correcting a mistake of law, even where a taxpayer may have relied to his detriment on that mistake. Dixon v. United States, 381 U.S. 68, 72-73 (1965); Auto. Club of Mich. v. Commissioner, 353 U.S. 180, 183 (1957); see also Schuster v. Commissioner, 312 F.2d 311, 317 (9th Cir. 1962), affg. in part and revg. in part 32 T.C. 998 (1959); Zuanich v. Commissioner, 77 T.C. 428, 432-433 (1981). An exception exists only in the rare case where a taxpayer can prove he or she would suffer an unconscionable injury because of that reliance. Manocchio v. Commissioner, 78 T.C. 989, 1001 (1982), affd. 710 F.2d 1400 (9th Cir. 1983). Moreover, equitable estoppel is applied "against the Government with utmost caution and restraint". Schuster v. Commissioner, supra at 317.

The doctrine of estoppel is not applicable unless the party relying on it establishes all of the following elements at a minimum: (1) A false representation or wrongful, misleading silence by the party against whom estoppel is to be invoked; (2) an error in a statement of fact and not an opinion or statement of law; (3) ignorance of the true facts; (4) the party claiming estoppel must be adversely affected by the acts or statements of the person against whom an estoppel is claimed; and (5) detriment suffered by the party claiming estoppel because of his or her adversary's false representation or wrongful, misleading silence. Norfolk S. Corp. v. Commissioner, 104 T.C. 13, 60 (1995), affd. 140 F.3d 240 (4th Cir. 1998); Estate of Emerson v. Commissioner, 67 T.C. 612, 617-618 (1977); Megibow v. Commissioner, T.C. Memo. 2004-41; see also Lignos v. United States, 439 F.2d 1365, 1368 (2d Cir. 1971).

The doctrine of equitable estoppel was raised for the first time by respondent on brief.[13] Initially, respondent conceded that qualified higher education expenses include transportation costs. In respondent's trial memorandum, respondent relied on section 1.221-1(e)(2)(i), Income Tax Regs., for the proposition

---

[13] Although the Court offered petitioners the opportunity to file a response to respondent's brief, petitioners did not do so.

that transportation costs qualify as higher education expenses.[14]
Section 1.221-1(e)(2)(i), Income Tax Regs., defines qualified
higher education expenses as the "cost of attendance (as defined
in section 472 of the Higher Education Act of 1965, 20 U.S.C.
1087ll, as in effect on August 4, 1997)" and further states that
consistent with 20 U.S.C. sec. 1087ll (Supp. IV 1998) the cost of
attendance includes an allowance for transportation.[15]

For purposes of section 72(t)(2)(E), however, section
529(e)(3) defines qualified higher education expenses as tuition,
fees, books, supplies, equipment, and room and board.  Clearly,
transportation expenses are not included within this definition.
With regard to the definition of qualified higher education
expenses under section 529(e)(3)(B)(ii), the term "cost of
attendance" is applicable only in the context of determining the
minimum allowance for room and board expenses.  On brief,
respondent admitted that respondent's position was misguided by
section 1.221-1(e)(2)(i), Income Tax Regs.  Thus, respondent's
misconceived concession was an erroneous representation of law.
As such, equitable estoppel does not bar respondent from changing
respondent's position to correct a mistake of law unless

---

[14] Sec. 221 and the regulations thereunder set forth the criteria to deduct interest paid on qualified education loans.

[15] The Higher Education Act of 1965 sec. 472, currently codified at 20 U.S.C. 1087ll(2) (2000), provides that the term "cost of attendance" means an allowance for transportation as determined by the institution.

petitioners would suffer an unconscionable injury because of their reliance on respondent's concession at trial. Although petitioners did not file a brief in response, the record in its entirety fails to demonstrate that petitioners suffered an unconscionable injury because of their reliance on respondent's misrepresentation. Accordingly, we conclude that Mrs. Kandil's transportation expenses do not constitute qualified higher education expenses for purposes of section 72(t)(2)(E).

## Conclusion

We have considered all of the other arguments made by petitioners, and, to the extent that we have not specifically addressed those arguments, we conclude that they are without merit.

Reviewed and adopted as the report of the Small Tax Case Division.

To reflect our disposition of the disputed issue, as well as respondent's concession,

Decision will be entered under Rule 155.